The Circuit Court of Blount County granted the husband's petition to terminate the wife's periodic alimony. The wife, through able counsel, appeals and we affirm.
The trial judge apparently terminated the periodic alimony pursuant to § 30-2-55, Code of Ala. 1975 (1979 Cum.Supp.). This section, is pertinent part, is as follows:
 Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex. . . .
From our reading of the record and briefs of the parties we determine the dispositive issue to be whether the evidence supports a conclusion that the wife was "living openly or cohabiting with a member of the opposite sex." Able and distinguished counsel for the wife, in an excellent brief, contends that certain language in the trial court's decree indicates that the trial court terminated the alimony for other than the aforementioned statutory reason. As stated above, we do not agree. The instant appeal was clearly tried on the theory that the wife was "living openly, etc. . . ." This was the issue to be determined by the trial court. We consider language in the decree touching on other areas to simply be surplusage.
This court has on three occasions within the last twelve months addressed the dispositive issue here presented. We do not deem it necessary nor prudent to restate what we have previously written. We refer interested parties to Ivey v.Ivey, Ala.Civ.App., 378 So.2d 1151 (1979); Parish v. Parish, Ala.Civ.App., 374 So.2d 348, cert. denied, Ala., 374 So.2d 351
(1979); Atkinson v. Atkinson, Ala.Civ.App., 372 So.2d 1106
(1979).
Suffice it to say that whether or not a former spouse is living openly or cohabiting with a member of the opposite sex for purposes of this legislative enactment is a factual determination. Whether the petitioner under this statute has met the burden of proof is ultimately a question of fact. See,Ivey, supra; Parish, supra; Atkinson, supra. This court can only reverse the trial court's determination in this instance, that the husband met his burden of proof, if after consideration of all the evidence and the reasonable inferences drawn therefrom *Page 198 
we conclude that such determination is plainly and palpably wrong. See, Ivey, supra; Parish, supra; Atkinson, supra.
Viewing the record with the attendant presumption accorded the trial court's decree, we find the following:
The parties were divorced in 1975. The wife was awarded the home and $1,200 per month periodic alimony. After the divorce, the wife sold the home for approximately $90,000.
The wife first met one Gilbert Quintell in the City of Birmingham, Alabama, in the spring of 1978. Shortly thereafter, the wife purchased a home in Destin, Florida. In February, 1979, the wife sold the Destin, Florida, house to Quintell. The purchase of the Florida house was originally accomplished by lending Quintell some $40,000.
After the sale of the Destin property, the wife rented another house in Destin which Quintell owned. However, after the renting of the Quintell property and the sale of the wife's Destin property, there was evidence that the wife continued to receive her mail, bank statements, and bills at the property sold by her to Quintell. Additionally, when the wife registered her automobile with the Florida authorities, she continued to list the property she sold to Quintell as her residence. Furthermore, there was evidence that certain of the wife's clothing and furniture remained at the Destin property after its sale to Quintell.
From January, 1979 (approximately one month prior to the sale), until June of 1979, the husband retained several private investigators to observe Quintell's house.
During this period of time, the investigators testified they observed the wife and Quintell doing yard work and engaged in recreational activities at the house Quintell purchased from the wife. These investigators further testified that both the wife and Quintell remained in this house overnight; furthermore, that vehicles belonging to the wife and Quintell were parked at this house on numerous occasions, these occasions being during the daylight hours and at night.
In addition to the above, the wife admitted sleeping in the same house with Quintell both in Birmingham and Florida.
When asked numerous questions about specific sexual activities with Quintell, the wife and Mr. Quintell invoked the fifth amendment to the United States Constitution. The wife later in the trial denied having sexual relations with Quintell.
As indicated earlier, the above is pertinent in this court's review of the trial court's action. We should not be understood as indicating that the wife failed to offer testimony explaining or justifying the above. However, in view of the evidence as shown above, we cannot say the trial court was plainly and palpably wrong in concluding that the husband had met his burden of proof that the wife was "living openly or cohabiting with a member of the opposite sex." To do so would in effect be substituting our judgment for that of the trial court. This the law does not permit.
The case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.