This is an appeal from a judgment of the Circuit Court of Winston County which terminated the ex wife's periodic alimony pursuant to § 30-2-55, Code of Ala. 1975 (Cum.Supp. 1980).
The appellant, Mrs. Hicks, and the appellee, Mr. Hicks, were divorced on August 22, 1979. The divorce decree required Mr. Hicks to pay $1,000 per month in periodic alimony. On August 29, 1979, pursuant to a motion by Mr. Hicks, the trial court reduced the amount of periodic alimony to $750 per month. Mr. Hicks appealed that holding to this court and we affirmed.Hicks v. Hicks, 387 So.2d 207 (Ala.Civ.App. 1980), cert.denied, 387 So.2d 209 (Ala. 1980).
On December 30, 1980, Mr. Hicks petitioned the trial court seeking to have the alimony payments completely terminated pursuant to § 30-2-55. His petition alleged that Mrs. Hicks was "living openly and/or cohabiting with a member of the opposite sex." The court, after an ore tenus trial, held that Mrs. Hicks had cohabited with a member of the opposite sex within the meaning of § 30-2-55 and terminated her alimony. Mrs. Hicks appeals to this court from that order contending that the evidence is insufficient to support the judgment. We agree and reverse.
The dispositive issue is whether the trial court erred in terminating the alimony in light of § 30-2-55 and subsequent judicial interpretations of that statute.
The instant case comes to this court from the trial court clothed with a presumption of correctness. This presumption is rebuttable and "may be overcome by the lack of evidence or where the evidence presented to the trial court is sufficient to sustain its judgment." Cougar Mining Company v. Mineral Land Mining Consultants, Inc., 392 So.2d 1177, 1178 (Ala. 1981). *Page 33 
In the instant case the trial court was presented with evidence that Mrs. Hicks and a Mr. Wendell Crumpton had dated two or three times per week for about a year. It is undisputed that Mrs. Hicks lived in Lynn and Mr. Crumpton lived approximately thirteen miles away in Haleyville. Mr. Crumpton was a frequent visitor at Mrs. Hicks' home but there is no evidence the two of them shared a common dwelling. Mr. Crumpton's visits to Mrs. Hicks' home normally consisted of eating with Mrs. Hicks, playing cards with Mrs. Hicks and others or watching television with Mrs. Hicks. On several of these visits Mr. Crumpton stayed quite late at Mrs. Hicks' home. There is conflicting evidence that on one occasion Mr. Crumpton "slept over." Mrs. Hicks was seen at Mr. Crumpton's trailer late at night on only one occasion. No evidence was introduced that she ever spent the night there. Mrs. Hicks and Mr. Crumpton both visited a mutual friend in Oklahoma. They traveled to Oklahoma in separate vehicles. The evidence is in conflict as to whether they returned together in the same vehicle. Additionally, Mr. Crumpton accompanied Mrs. Hicks to Albany, Georgia, along with Mrs. Hicks' brother and his family. Finally, the trial court was also presented with evidence that Mrs. Hicks had begun, in recent months, to date another man in addition to Mr. Crumpton.
Section 30-2-55 in pertinent part provides:
 Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex. . . .
The trial court in the case before us specifically found that Mrs. Hicks and Mr. Crumpton were cohabiting with one another. The word cohabitation, as used in § 30-2-55, has not been specifically defined by an appellate court of this state.
Courts from other jurisdictions have defined cohabitation in various manners. A Mississippi court has defined cohabitation as dwelling together. Hunt v. Hunt, 172 Miss. 732, 161 So. 119
(1935). A New York court has defined cohabitation as simply living together. Bracksmayer v. Bracksmayer, 22 N.Y.S.2d 110 (1940). Another New York court has held that cohabitation implies a relationship of a permanent nature existing over a period of time and means more than a single act of intercourse.Kinley v. Kinley, 115 N.Y.S.2d 341 (1952).
Based upon the foregoing authorities and common usage, it is apparent that cohabitation requires some permanency of relationship coupled with more than occasional sexual activity between the cohabitants. In previous cases before this court in which alimony has been terminated pursuant to § 30-2-55, this permanency of relationship has manifested itself by the former spouse sharing a dwelling with a member of the opposite sex.Blackwell v. Blackwell, 383 So.2d 196 (Ala.Civ.App. 1980); Iveyv. Ivey, 378 So.2d 1151 (Ala.Civ.App. 1979); Parish v. Parish,374 So.2d 348 (Ala.Civ.App. 1979); cert. denied, 374 So.2d 351
(Ala. 1979); Atkinson v. Atkinson, 372 So.2d 1106 (Ala.Civ.App. 1979). Other factors, previously considered by this court, which indicate a permanency of relationship include ceasing to date other members of the opposite sex, Atkinson v. Atkinson,supra; payment of the former spouse's creditors by a member of the opposite sex, Parish v. Parish, supra; and purchase of clothes for the former spouse by a member of the opposite sex,Parish v. Parish, supra. None of the factors indicating a permanency of relationship are present in this case.
The facts in the instant case are more similar to those before the court in Jones v. Jones, 387 So.2d 217 (Ala.Civ.App. 1980), cert. denied, 387 So.2d 219 (Ala. 1980). In Jones, the ex wife and her male friend did not share a common dwelling though he was a frequent visitor and often stayed overnight. The male friend did not contribute to the ex wife's finances. Unlike the case presently before us, the couple in Jones *Page 34 
freely admitted having had sexual relations on numerous occasions. The trial court held that such evidence was not sufficient to terminate alimony under § 30-2-55 and we affirmed. Consequently, we must reverse in this case.
The burden of proof is upon the party petitioning for relief under the statute. Section 30-2-55 does not require the petitioner to prove an habitual living arrangement arising to the level of a common-law marriage, but it does require that the petitioner prove more than an occasional postmarital indiscretion. Parish v. Parish, supra; Atkinson v. Atkinson,supra. The evidence before the trial court in this case at most could be interpreted as proving only an occasional indiscretion. Such evidence is not sufficient to terminate alimony under § 30-2-55.
On appeal, through counsel, Mr. Hicks maintains that, notwithstanding § 30-2-55, the trial court had before it sufficient evidence to terminate Mrs. Hicks' alimony. Undoubtedly, a trial court under appropriate circumstances has the power to modify or terminate alimony based upon changed circumstances. Montgomery v. Montgomery, 275 Ala. 364,155 So.2d 317 (1963). The trial court in this instance, however, did not base its decision to terminate the alimony on any evidence of changed circumstances. Instead, it clearly and explicitly based its judgment upon § 30-2-55. On appeal, this court will consider only the issues determined by the trial court. Trans-Continental Mutual Insurance Co. v. Harrison,262 Ala. 373, 78 So.2d 917 (1955).
The wife also contends the trial court erred in failing to award attorney's fees to her for representation in the trial court. The award of attorney's fees at the trial level is within the sound discretion of the trial court. Penn v. Penn,246 Ala. 104, 19 So.2d 353 (1944). We find no abuse of discretion in this case.
The wife requests attorney's fees for representation on appeal. A fee of $500 is awarded for such representation.
The case is due to be affirmed in part, reversed in part, and remanded for entry of a judgment not inconsistent with the above.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.