The former wife appealed from the following judgment of the trial court which terminated her periodic alimony:
 "This cause comes before the Court on Mr. McCluskey's petition to terminate alimony. Mrs. McCluskey filed an answer denying the allegations of the petition and specifically denied receiving any material or significant financial contributions from the person with whom she was alleged to have cohabited. In addition, Mrs. McCluskey also claimed in her answer that she had made no material or significant financial contribution to the person with whom she was alleged to have cohabited. The cause was set for hearing and testimony was taken from all witnesses presented by the parties.
 "During the trial of this cause, the attorney for the petitioner focused upon the time which Mrs. McCluskey spent with a Mr. Smith and attempted to show that Mrs. McCluskey and Mr. Smith were cohabiting or living openly with each other in violation of Section 30-2-55 of the Code of Alabama. The respondent took the position that the statute in question was one which primarily dealt with financial arrangements and that since no financial benefit accrued to Mrs. McCluskey from Mr. Smith or to Mr. Smith from Mrs. McCluskey that Mrs. McCluskey was not in violation of the statute.
 "The Court makes the following specific findings of facts:
 "1. The parties were divorced by decree of this Court in February of 1986. The award of alimony in this case was made by the Court after deliberate consideration of all those factors which are used to measure an award of alimony: the length of the marriage, age, health and future prospects of the parties. In making the award of alimony in this case, the Court considered each of these factors and its award of alimony was determined, in part, by the fact that Mrs. McCluskey had been primarily engaged as a homemaker throughout the term of the marriage and lacked any acquired skills or academic or vocational training and that Mr. McCluskey was employed at Reynolds Metals Company where he earned a good wage.
 "2. The Court finds that Barbara McCluskey paid all her living expenses including rent, utilities, insurance and car expenses. There was no evidence that Smith paid any of Mrs. McCluskey's expenses of any kind. The evidence was further clear to the point that Smith maintained his own home in a rented apartment in Sheffield, Alabama at all times. Smith paid his own rent, utilities, insurance, car expenses, etc. Mrs. McCluskey paid none of his expenses.
 "3. There is absolutely no evidence that Smith received any mail at Mrs. McCluskey's apartment and never used her address as his own. To the contrary, the evidence showed that he used his Sheffield address and received his mail at his Sheffield address where he maintained his domicile.
 "4. A portion of Smith's clothes were kept from time to time in Mrs. McCluskey's apartment. The bulk of his wardrobe was kept in his Sheffield home. Mrs. McCluskey did not wash Smith's clothes. None of Smith's other personal property was moved into Mrs. McCluskey's apartment.
 "5. There is no evidence that Smith performed any chores at Mrs. McCluskey's apartment.
 "6. There is no evidence that Mrs. McCluskey used any of her funds in any way to support Smith or that Smith financially or materially supported Mrs. McCluskey.
 "7. There was evidence to the effect that Mrs. McCluskey and Mr. Smith *Page 330 
spent nights together in her residence and that acts of sexual intercourse occurred. Mrs. McCluskey and Mr. Smith both admitted that they spend from one-half to two-thirds of their nights together with Mr. Smith staying at Mrs. McCluskey's residence. Both testified that Mr. Smith would go by his apartment after work, pick up any necessary clothes, check his mail and then go to Mrs. McCluskey's residence where he would spend the night and leave the next morning going to work. Testimony from Mr. McCluskey indicated that he checked the house over a period of time on a regular basis and he employed a private detective who watched Mrs. McCluskey's residence over a period of time, and their testimony substantiated the fact that Mr. Smith stayed with Mrs. McCluskey on a regular basis. Both Mrs. McCluskey and Mr. Smith admitted to going together on trips and vacations with Mr. Smith paying the substantial portion of the bill, usually all of it. In addition they went to public outings together, club meetings and restaurants.
 "8. No efforts were made by Mrs. McCluskey or Mr. Smith to secrete their relationship. Mrs. McCluskey testified that she did not tell anyone that Mr. Smith spent nights with her but that she also did not do anything to conceal the fact that Mr. Smith spent nights with her. She further stated that as far as she was concerned the action was open. Both Mrs. McCluskey and Mr. Smith testified that they would probably continue their relationship; there was no testimony from either that they intended to terminate that relationship. By the testimony of Mrs. McCluskey and Mr. Smith this relationship began shortly after the divorce decree was issued and continued through the date of the trial of this cause (and to this date no evidence has been presented to the Court to indicate that relationship has terminated).
 "Therefore, after reviewing all of the facts in this case, the Court finds that there was a relationship established between Mrs. McCluskey and Mr. Smith which showed characteristics of permanency and that this relationship was coupled with a sexual relationship. Mr. Smith was more than a casual visitor in Mrs. McCluskey's home; the evidence in this case clearly demonstrates that Mrs. McCluskey and Mr. Smith spent a majority of all nights together in a manner which Mrs. McCluskey described as being open and without efforts to conceal the relationship. The evidence in this case does not establish a common law marriage since neither Mrs. McCluskey nor Mr. Smith held the other out to the public as a spouse nor does it establish a relationship in which either Mrs. McCluskey or Mr. Smith depended upon the other for financial support. However, the relationship was one in which Mr. Smith and Mrs. McCluskey openly shared companionship, social outings, vacations, and, during a majority of the nights, the same roof over their heads. The evidence in this case indicates that Mrs. McCluskey was living openly or cohabiting with a member of the opposite sex in violation of Section 30-2-55 of the Code of Alabama and, therefore, Mr. McCluskey's petition to terminate alimony is granted and Mr. McCluskey is relieved from the obligation of paying any future alimony to Mrs. McCluskey."
We have carefully studied all of the evidence and conclude that the learned trial court admirably summarized the ore tenus trial evidence. We adopt that judgment as part and parcel of this opinion.
Termination of periodic alimony is authorized by section30-2-55, Code 1975, where the alimony-receiving party is living openly or cohabiting with a member of the opposite sex. In order for an alimony-paying party to demonstrate that the receiving party is living openly or cohabiting with a member of the opposite sex, proof must be presented of some permanency of the receiving party's relationship with a member of the opposite sex, as well as evidence of more than occasional sexual conduct between the receiving party and the member of the opposite sex. Hicks v. Hicks, 405 So.2d 31
(Ala.Civ.App. 1981). Stated differently, it is not enough to prove only a brief *Page 331 
sojourn but, on the other hand, it is not essential that the proof be sufficient to prove a common law marriage — the intent of the legislature in enacting section 30-2-55 being to strike a balance between those two situations. While not every occurrence of postmarital unchastity by a receiving party will terminate periodic alimony, a paying party need not prove that the receiving party is habitually living with another and that the couple consider themselves to be married to each other.Vaughn v. Vaughn, 507 So.2d 960 (Ala.Civ.App. 1987). When a trial court hears ore tenus testimony, the judgment of the trial court, including its actual or implied determination as to whether the burden of proof as to cohabitation has or has not been met, is presumed to be correct and will not be reversed on appeal unless we conclude that the judgment was plainly and palpably wrong after considering all of the evidence and all reasonable inferences arising thereunder.Capper v. Capper, 451 So.2d 359 (Ala.Civ.App. 1984);Richardson v. Hunte, 435 So.2d 1315 (Ala.Civ.App. 1983). In many of the cases which we have reviewed on appeal since the adoption of section 30-2-55, close factual questions were presented and there was adequate evidence to support a determination either for the paying party or for the receiving party. For examples, see: Mecham v. Mecham,398 So.2d 310 (Ala.Civ.App. 1981), and Blackwell v. Blackwell,383 So.2d 196 (Ala.Civ.App. 1980). Especially in such cases, the trial court must have some latitude, a discretion to exercise, in reaching a decision as to whether alimony should be terminated. Elsevier v. Elsevier, 395 So.2d 73
(Ala.Civ.App. 1980), cert. denied, 395 So.2d 74
(Ala. 1981); Jones v. Jones, 387 So.2d 217
(Ala.Civ.App.), cert. denied, 387 So.2d 219 (Ala. 1980);Atkinson v. Atkinson, 372 So.2d 1106 (Ala.Civ.App. 1979).
Here, the trial court was not palpably wrong. While the trial court, in its discretion, could have reached a contrary decision under the evidence, we find no abuse of discretion. Under the ore tenus rule, it is presumed that the trial court correctly determined that Mr. McCluskey met his burden of proof. Capper, supra; Richardson, supra. When an appellate court is unclear and uncertain as to whether the relief should, or should not, have been granted, the party having the burden of persuasion as to that issue has failed to overcome the ore tenus presumption since, under those circumstances, it is not plain or clear that the trial court was wrong in its decision. Giles v. Giles,512 So.2d 1380 (Ala.Civ.App. 1987).
Mr. Smith and Mrs. McCluskey admitted that they were open in their relationship for almost a year, that they spent from one-half to two-thirds of their nights with each other under her roof, and that, on those occasions, she provided their evening meals, with a reasonable inference being that she also furnished their breakfasts before he left for work. Those stronger facts distinguish this case from Knight v.Knight, 500 So.2d 1113 (Ala.Civ.App. 1986).
We affirm.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of section12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.