Charles Ray ("the husband") and Mary Frances Ward ("the wife") were divorced on March 22, 1984. By an agreement entered at the time the divorce judgment was entered, the husband was to pay the wife the amount of his military retirement benefits, which at the time were $783.63 a month. His monthly retirement checks were, by the agreement, mailed directly to the wife. Under the agreement, the retirement benefits were "considered as child support . . . and periodic alimony." The agreement did not provide for an adjustment in the amount of the payment after the child reached age 19.
In December 1996, the husband stopped having the retirement checks sent to the wife and began paying her half the amount called for in the agreement. Three months later, he stopped sending anything. The wife petitioned for a rule nisi, asking that he be found in contempt for not paying the alimony and contending that he was more than $15,000 in arrears. The trial court held a hearing on the petition on August 12, 1998. At the hearing, the husband's attorney asked the wife about a relationship she had been having:
 "[Attorney]: Now, what was the name of this gentleman you lived with over there? You lived with a gentleman in Austin, Texas; what was his name?
 "[Wife]: I had a boyfriend named Domingo, but I didn't live with him.
"[Attorney]: He didn't live with you at all?
"[Wife]: Oh, yeah, he stayed at my place and paid rent.
". . . .
"[Attorney]: Okay. And you shared a house together?
 "[Wife]: No, the house was mine. My cousin bought the house.
"[Attorney]: But he stayed under the same roof?
"[Wife]: Stayed there.
"[Attorney]: How long did he stay there for?
"[Wife]: Off and on about 12 years.
 "[Attorney]: Twelve years. And did you have sexual relations with this man?
"[Wife]: Of course."
The trial court issued a judgment finding the husband in contempt and ordering him to pay an arrearage in alimony, which the court determined to be $15,141.90. The husband appealed. The Court of Civil Appeals affirmed, without an opinion (but with a dissenting opinion). Ward v.Ward, 782 So.2d 1284 (Ala.Civ.App. 1999). We granted the husband's petition for certiorari review. *Page 1287 
The husband contends that at the hearing on the wife's petition for the rule nisi she admitted, in effect, to cohabitating with another man. Thus, he argues here, as he did at the hearing, that he was relieved of any obligation to pay alimony, by the operation of § 30-2-55, Ala. Code 1975. That Code section reads:
 "Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabitating with a member of the opposite sex. This provision shall be applicable to any person granted a decree of divorce either prior to April 28, 1978, or thereafter; provided, however, that no payments of alimony already received shall have to be reimbursed."
Because the trial court found an arrearage in the husband's payments, payments that obviously would have been alimony (the child having reached majority before the husband reduced, and then stopped, the payments), we must assume the judge found the husband had not proved cohabitation. "Whether cohabitation exists is a factual determination for the trial judge in each case." Capper v. Capper, 451 So.2d 359, 360
(Ala.Civ.App. 1984) (citing Tucker v. Tucker, 416 So.2d 1053
(Ala.Civ.App. 1982)). "Where the trial judge makes factual determinations based upon the evidence and finds the petitioner has met his burden of proof, this court will not substitute its judgment for that of the trial court unless it concludes that the trial court's findings are plainly and palpably wrong." Ivey v. Ivey, 378 So.2d 1151,1153 (Ala.Civ.App. 1979) (citing Sutton Sutton, 55 Ala. App. 254,314 So.2d 707 (1975).
In Capper, supra, the court found that the wife's longtime paramour had lived in her apartment for 23 days, had kept his personal items there, and had shared her bed and engaged in sexual relations with her. The court held that this was enough to support a finding of cohabitation. Likewise, in Ivey, supra, the court found sufficient evidence of cohabitation where the wife admitted in interrogatories that she had shared an apartment with a man. In McClusky v. McClusky, 528 So.2d 328
(Ala.Civ.App. 1988), the Court of Civil Appeals found the evidence sufficient to support (though perhaps not to require) the trial court's finding of cohabitation: the former wife was not living full-time with her boyfriend, she and the boyfriend paid their own bills, and they maintained their own residences; however, the couple admitted that they stayed with each other 50%-75% of the time, that they had sexual intercourse, and that they considered their relationship open and notorious.
"A petitioner must prove some permanency of relationship, along with more than occasional sexual activity[,] in order to establish cohabitation. Factors which suggest `some permanency of relationship' include evidence that the former wife and alleged cohabitant occupied the same dwelling and shared household expenses." Taylor v. Taylor,550 So.2d 996, 997 (Ala.Civ.App. 1989) (citing Hicks v. Hicks, 405 So.2d 31
(Ala Civ. App. 1981)).
"In giving [§ 30-2-55] a rational, sensible construction, we find the legislature intended to strike a balance between the occasional brief sojourn and the common-law marriage. Thus, while not every occurrence of postmarital unchastity by a former spouse will bar the right to alimony, a petitioner need not prove the former spouse is habitually living with another and that the couple consider themselves married." Parish v. Parish, 374 So.2d 348, *Page 1288 
349 (Ala.Civ.App. 1979) (citations omitted). Considering that the wife in this present case testified that she had lived with a man in the same house for 12 years, that he had helped with the expenses, and that they had had sexual relations, we find that the evidence was sufficient to support a finding that the wife had cohabitated with him.
Further, we conclude that the trial court plainly and palpably erred in finding no cohabitation, because the evidence was supplied by the wife's own testimony and was uncontroverted. A trial court cannot ignore undisputed evidence. Carufel v. Hub Trucking, Inc., 687 So.2d 200
(Ala.Civ.App. 1996); State ex rel. Smith v. Smith, 631 So.2d 252
(Ala.Civ.App. 1993); Easterly v. Beaulieu of America, Inc., 717 So.2d 406
(Ala.Civ.App. 1998).
The Court of Civil Appeals, in its cases construing § 30-2-55, has established the rule that "once there is sufficient proof that the spouse is openly living or cohabitating with a member of the opposite sex, no alimony accrues or matures beyond the time that such cohabitation began." Russell v. Russell, 586 So.2d 12, 13 (Ala.Civ.App. 1991). See Wood v. Wood, 682 So.2d 1386 (Ala.Civ.App. 1996). Therefore, the husband is not liable for any alimony after the date the wife began cohabitating with her boyfriend in 1986. The trial court thus erred in finding the husband in contempt and in ordering him to pay alimony for that period after the cohabitation began. The husband is not, however, entitled to a refund for any alimony he has already paid for that period after the cohabitation began. See the last sentence of § 30-2-55, Ala. Code 1975.
Because the trial court's judgment was erroneous, we reverse the Court of Civil Appeals' judgment of affirmance. The cause is remanded for the Court of Civil Appeals to direct the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED.
Hooper, C.J., and Houston, See, Lyons, Brown, and Johnstone, JJ., concur.
Maddox and Cook, JJ., dissent.