MOORE, Judge.
 

 Timothy B. Decker (“the former husband”) appeals from a judgment of the DeKalb Circuit Court declining to terminate his alimony obligation to his former wife, Linda L. Decker (“the wife”). We affirm.
 

 Procedural History
 

 This is the second time the parties have been before this court.
 
 See Decker v. Decker,
 
 984 So.2d 1216 (Ala.Civ.App.2007)
 
 (“Decker I”).
 
 In
 
 Decker I,
 
 we set forth the following pertinent procedural history:
 

 “The parties were divorced by a judgment of the DeKalb Circuit Court on February 7, 2003. The divorce judgment provided, among other things, that the former husband pay the former wife $3,500 per month as periodic alimony and maintain a $500,000 life-insurance policy on his life naming the former wife as the beneficiary. On August 27, 2004, the former husband filed a petition stating, in pertinent part:
 

 “‘(3) Since the entry of the Final Judgment there has been a material change in circumstances which warrants a reduction in [the former husband’s] alimony obligation.
 

 “ ‘(4) The Final Judgment ordered [the former husband] to maintain $500,000.00 of insurance on his life naming [the former wife] as beneficiary.
 

 “‘(5) Since the entry of the Final Judgment there has been a material change in circumstances which warrants termination of the insurance policy.
 

 “ ‘(6) Pursuant to paragraph seven (7) of the Final Judgment, [the former husband] was awarded various items of personal property from the marital home. [The former wife] has failed or refused to allow [the former husband] to take possession of said items or disposed [of] or destroyed the same. [The former husband] would request that this Court enter a judgment in his favor and against [the former wife] for the value of the items.
 

 “ ‘(7) Pursuant to the Final Judgment, [the former husband] was awarded the marital residence. [The former wife] failed to vacate the marital property as ordered by this Court. Further, [the former wife] caused damage and harm to the property pri- or to vacating the same. [The former husband] would request that this Court enter a judgment in his favor and against [the former wife] for such damages.’
 

 “On December 7, 2004, the former wife answered the petition and filed a counterclaim stating:
 

 “ T. On February 7, 2003, this Court entered an Order directing the [former husband] to provide the [former wife] with a life insurance policy in the amount of $500,000.00;
 

 
 *251
 
 “ ‘2. The [former husband] failed and refused to comply with said Order and on the 28th day of September, 2004, this Court made and entered an order directing the [former husband] to provide the [former wife], within 30 days from the date of the Order, a life insurance policy in the amount of $500,000.00, as previously ordered by the Court in the Order dated February 7, 2003;
 

 “ ‘3. The [former husband] was further directed by the September 28, 2004[,] Order to pay the costs incurred in the cause;
 

 “ ‘4. As of this date, the [former husband] has not provided the insurance policy nor has he paid the cost of such action as directed by the Court.
 

 “ ‘Wherefore, [the former wife] respectfully prays judgment against the [former husband] as follows:
 

 “‘A. That the court will find the [former husband] in contempt of this Court for failing to comply with the prior orders of this Court dated February 7, 2003[,] and September 28, 2004;
 

 “ ‘B. That the Court will order the [former husband] to pay the [former wife’s] attorney for his services in this action; and “ ‘C. That this Court will make and enter such other and further orders which may be necessary in the premises.’
 

 “On March 6, 2006, the former husband amended his petition to request a termination of his alimony obligation, alleging:
 

 “ ‘[0]ne of the changed circumstances which has occurred since the last order in this cause is that the [former husband] has knowledge, information and belief and based on such knowledge, information and belief states as a fact, that the [former wife] has committed or engaged in certain conduct which under the laws of the State of Alabama would result in the termination of alimony.’
 

 “On December 19, 2006, the trial court entered a judgment stating, in pertinent part:
 

 “ ‘1. The [former husband] petitions the court for the termination or reduction of his periodic alimony payments. The [former husband] has failed to meet the burden of proof necessary to support a termination or reduction of said alimony. Accordingly, said petition is denied.
 

 “ ‘2. The [former husband] petitions the court for relief due [to] the [former wife’s] damaging or removing certain properties awarded to him in the divorce decree. The [former wife] admits to the damage and removal of some of said properties. The parties greatly dispute the amount of damages due as a result of [the former wife’s] actions. The Court finds that neither party has sufficiently proven the amount of such damages, but that there is sufficient evidence to support a finding that the damages amount to at least Twenty Thousand Dollars. Judgment is hereby entered against the [former wife] and in favor of the [former husband] in the sum of twenty thousand and no/100 dollars together with applicable interest.
 

 “ ‘3. The [former wife] counterclaimed against the [former husband] alleging his failure to insure his life for the benefit of the [former wife] as ordered in the decree. The testimony was that the [former husband] is in compliance with the order requiring the insurance except that he has not provided current proof of said insurance. The [former husband] shall im
 
 *252
 
 mediately supply the same to the [former wife] and shall further supply proof of the continuation of said policy to the [former wife] upon reasonable request for the same.’
 

 “The judgment did not dispose of the former wife’s counterclaim for contempt based on the former husband’s alleged failure to comply with the September 28, 2004, order requiring the former husband to pay certain costs.
 

 “On January 16, 2007, the former husband filed a motion to alter, amend, or vacate the court’s judgment. That same day the former wife filed a motion for a new trial. On April 12, 2007, the trial court denied both parties’ postjudgment motions. On May 16, 2007, the former husband filed his notice of appeal.”
 

 984 So.2d at 1217-19 (footnote omitted).
 

 This court noted that, in its December 19, 2006, judgment, the trial court had not “dispose[d] of the former wife’s counterclaim for contempt based on the former husband’s alleged failure to comply with the September 28, 2004, order requiring the former husband to pay certain costs.”
 
 Decker I,
 
 984 So.2d at 1218-19. Accordingly, we dismissed the former husband’s appeal on November 30, 2007.
 
 Id.
 

 On December 3, 2007, the former husband moved the trial court to set the case for a final hearing and to allow him to present additional testimony on the issue whether his periodic-alimony obligation should be terminated. On February 5, 2008, the trial court held a hearing on the former husband’s motion but declined to allow the former husband to present additional testimony. On February 7, 2008, the trial court amended the December 19, 2006, judgment by dismissing the former wife’s counterclaim for contempt and denying all remaining requests for relief. The former husband filed his notice of appeal on March 6, 2008.
 

 On appeal, the former husband argues that the trial court exceeded its discretion in declining to terminate his alimony obligation because, he says, he proved that the former wife had been cohabiting with a member of the opposite sex. He further argues that the trial court exceeded its discretion by disallowing him from presenting additional testimony at the February 5, 2008, hearing.
 

 Facts
 

 The former wife began dating Ken Archer in February 2002. At that time, Archer was a traveling sales representative; he traveled during the week and on some weekends. The former wife testified that her relationship with Archer was romantic and sexual. The former wife testified that she and Archer were open about their relationship and that everyone knew about that relationship. She testified that their relationship continued on and off for about four years but that she had also dated other men during that time.
 

 During the first part of the former wife’s relationship with Archer, the wife lived in Rainsville, Alabama, and Archer lived in Chattanooga, Tennessee; Archer subsequently moved to Atlanta, Georgia. Archer usually stayed at the former wife’s residence two weekends every month, and they slept in the same bed. The former wife testified that she had spent the night at Archer’s residence when he lived in Chattanooga “maybe three times” and when he lived in Atlanta “a few times.”
 

 In March 2004, the former wife moved in with her parents in Merritt Island, Florida. She continued her relationship with Archer while living with her parents. At some point, Archer relocated to Cocoa Beach, Florida, and, in January 2005, the former wife moved into a townhouse in Cocoa Beach. The former wife testified
 
 *253
 
 that she and Archer spent the night with each other but they did not have keys to each other’s residences. She testified that she has a key hidden outside her townhouse but does not believe that Archer knows about it. Archer later moved into the townhouse next to the former wife’s townhouse. Archer shared his townhouse with a roommate and the roommate’s child. The former wife testified that, after Archer moved next door, she and Archer continued to spend some nights at each other’s residences.
 

 During their relationship, the former wife and Archer spent all but one Christmas together. Archer spent Thanksgiving with her and her family and friends in November 2005. The former wife and Archer exchanged gifts at Christmas, on Valentine’s Day, and on birthdays. When the former wife’s son got married, Archer stood in as a witness because the son’s best friend could not. The former wife accompanied Archer to his father’s funeral. She has met some of his family. When Archer’s uncle visited him, the former wife went out with a group of people to entertain him. When Archer was away on business, he telephoned the former wife daily. The former wife also traveled with Archer on some of his business trips. Within the year and a half preceding December 2005, the former wife had accompanied Archer on eight of his business trips and had gone on one vacation with him; Archer paid for the vacation. On the business trips, Archer paid for the former wife’s plane ticket, and the former wife paid for anything else she did. In December 2005, the former wife sent out a letter to her family and friends updating them on her life. She referred to Archer as her “boyfriend of three years.”
 

 The former wife testified that Archer had never left clothing or personal items at her home. She stated that he may have tried to help her make a small repair to her home but that he had never financially assisted the former wife with repairs. He had never purchased any clothing for her but had purchased a “couple of little rings, charms,” and he took her out to dinner at least once a week. The former wife testified that, otherwise, Archer had not financially contributed to the former wife’s expenses. She testified that they very seldom ate at each other’s homes but that she had cooked him a “special dinner” once or twice and that he had tried to cook for her. She testified that she never washed his clothes and that she had ironed only once for him while they were in a hotel. She testified that she did not check his mail when he was out of town because his roommate did that. The former wife had driven Archer’s automobile, and Archer had driven her automobile “probably once or twice.” Archer had parked his boats at the former wife’s home during hurricanes.
 

 The former wife testified that she and Archer had broken up two or three months before the trial. She testified that they had gotten back together and had then broken up again about a month before the trial. At the time of the trial, the former wife’s son and daughter-in-law lived with her in her townhouse.
 

 I.
 

 We first address whether the trial court exceeded its discretion by not terminating the former husband’s periodic-alimony obligation. The former husband argues that his periodic-alimony obligation should be terminated on the basis of the former wife’s cohabitation with Archer, pursuant to § 30-2-55, Ala.Code 1975.
 
 [1]
 

 
 *254
 
 “It is a question of fact for the trial court to determine as to whether a former spouse is living openly or cohabiting with a member of the opposite sex in order to authorize a termination of periodic alimony under § 30-2-55, Code of Alabama 1975. The burden of proof as to that matter is upon the party seeking relief under that code section. The trial court’s decision upon that issue will not be revised upon an appeal unless, after considering all of the evidence and the reasonable inferences therefrom, the trial court was palpably wrong.
 
 Rutland v. Rutland,
 
 494 So.2d 662 (Ala.Civ.App.1986);
 
 Capper v. Capper,
 
 451 So.2d 359 (Ala.Civ.App.1984);
 
 Penn v. Penn,
 
 437 So.2d 1053 (Ala.Civ.App.1983);
 
 Peterson v. Peterson,
 
 403 So.2d 236 (Ala.Civ.App.), ce
 
 rt. denied,
 
 403 So.2d 239 (Ala.1981).
 

 “1... [C]ohabitation requires some permanency of relationship coupled with more than occasional sexual activity between the cohabitants. In previous cases before this court in which alimony has been terminated pursuant to § 30-2-55, this permanency of relationship has manifested itself by the former spouse sharing a dwelling with a member of the opposite sex.
 
 Blackwell v. Blackwell,
 
 383 So.2d 196 (Ala.Civ.App.1980);
 
 Ivey v. Ivey,
 
 378 So.2d 1151 (Ala.Civ.App.1979);
 
 Parish v. Parish,
 
 374 So.2d 348 (Ala.Civ.App.1979);
 
 cert. denied,
 
 374 So.2d 351 (Ala.1979);
 
 Atkinson v. Atkinson,
 
 372 So.2d 1106 (Ala.Civ.App.1979). Other factors, previously considered by this court, which indicate a permanency of relationship include ceasing to date other members of the opposite sex,
 
 Atkinson v. Atkinson, supra;
 
 payment of the former spouse’s creditors by a member of the opposite sex,
 
 Parish v. Parish, supra;
 
 and purchase of clothes for the former spouse by a member of the opposite sex,
 
 Parish v. Parish, supra.’
 
 ”
 

 Knight v. Knight,
 
 500 So.2d 1113, 1115 (Ala.Civ.App.1986) (quoting
 
 Hicks v. Hicks,
 
 405 So.2d 31, 33 (Ala.Civ.App.1981)).
 

 The former husband cites
 
 Ex parte Ward,
 
 782 So.2d 1285 (Ala.2000), in support of his position that the trial court should have found that the former wife had been cohabiting with Archer. In
 
 Ward,
 
 the trial court found that the former wife had not cohabited with a man despite evidence indicating that the former wife “had lived with a man in the same house for 12 years,” that the man had helped the former wife with expenses, and that the former wife and the man had had sexual relations. 782 So.2d at 1288. The supreme court concluded that the trial court had erred in failing to find cohabitation.
 
 Id.
 
 We note, however, that the facts in the present case are easily distinguishable from those in
 
 Ward
 
 because the former wife and Archer did not share a home and Archer did not help the former wife with her expenses.
 

 We conclude that the facts in the present case are more analogous to the facts in
 
 Rutland v. Rutland,
 
 494 So.2d 662 (Ala.Civ.App.1986). In
 
 Rutland,
 
 the evidence showed that the former wife spent the night with a man almost every week, had sexual relations with that man, went out socially with the man almost every weekend, cooked an occasional weekday meal for the man, and occasionally took trips
 
 *255
 
 with the man and shared a hotel room. 494 So.2d at 663. The man, however, did not keep any clothing or other personal items at the former wife’s home, he did not receive mail at the former wife’s home, and he did not materially or habitually help the former wife with her expenses.
 
 Id.
 
 Further, the former wife had occasionally dated other men, and the former wife and the man never shared a common residence.
 
 Id.
 
 The trial court concluded that although the former wife and the man “were regular social and sexual companions, such a conclusion does not necessarily dictate or require a finding that the former wife was living or cohabiting with him.” 494 So.2d at 663-64. Based on the evidence, the trial court found that the former wife had not cohabited with the man and declined to terminate the former husband’s periodic-alimony obligation. 494 So.2d at 662-63. On appeal, this court found that the trial court had acted within its discretion and affirmed the trial court’s judgment. 494 So.2d at 664.
 

 In the present case, the former wife and Archer have spent the night together, have had sexual relations, have gone out on dates, have shared meals, and have taken trips together and shared a hotel room. Archer, however, did not keep any clothing or personal items at the former wife’s home, and he did not materially or habitually contribute to the former wife’s expenses. Fui’ther, the former wife testified that she has dated men other than Archer and that she and Archer have never shared a residence. Based on the foregoing, we conclude that the trial court acted within its discretion in declining to terminate the former husband’s periodic-alimony obligation.
 

 II.
 

 We next address whether the trial court exceeded its discretion in failing to reopen the case for the former husband to introduce additional evidence. “The decision of whether to reopen a case for additional evidence lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion.”
 
 Green Tree Acceptance, Inc. v. Standridge,
 
 565 So.2d 38, 46 (Ala.1990). The former husband argues that the trial court exceeded its discretion in declining to allow him to present additional evidence. He asserts that the evidence was unavailable at the 2006 trial because the witness whose testimony he desired to offer lived in Florida at that time and, therefore, could not have been subpoenaed to testify at the trial. The former husband asserts that the witness has since moved to Alabama and, therefore, could now be subpoenaed to testify. We note, however, that the former husband has not argued that the witness at issue would not have voluntarily testified at the 2006 trial despite her living in Florida. In fact, the husband submitted an affidavit that was apparently voluntarily executed by the witness. Accordingly, we cannot conclude that the trial court exceeded its discretion in failing to reopen the case for the presentation of additional evidence.
 

 Based on the foregoing, we affirm the judgment of the trial court.
 

 The former wife’s request for the award of an attorney fee on appeal is denied.
 

 AFFIRMED.
 

 THOMPSON, P.J, and PITTMAN and THOMAS, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 [1]
 

 . Section 30-2-55, Ala.Code 1975, provides, in pertinent part:
 

 
 *254
 
 "Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of
 
 such
 
 alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex.”