THOMAS, Judge,
concurring in part and dissenting in part.
Although I concur in all other aspects of the main opinion, I must respectfully dissent from that portion of the opinion affirming the trial court’s denial of the former husband’s petition to terminate alimony, which was based, in part, on the former husband’s assertion that the former wife had been cohabitating with a member of the opposite sex. The former wife, who is a legal secretary, testified that she had consulted both Ala.Code 1975, § 30-2-55, and some of the caselaw addressing that code section when she was served with the former husband’s petition to terminate alimony. She also admitted that she and her alleged paramour had changed aspects of their behavior after she was served with the former husband’s petition to terminate alimony.
The former wife’s testimony at trial was, at best, inconsistent. When asked whether she was emotionally and sexually in *92 volved with the alleged paramour, the former wife responded “yes and no” and said that she was not “emotionally and sexually involved with anyone.” She later testified that she was “emotionally involved” with her alleged paramour. She also admitted being “emotionally attached” to her alleged paramour and admitted having had a sexual relationship with him in the past.
Although they did not share expenses or live in the same dwelling, see Taylor v. Taylor, 550 So.2d 996, 997 (Ala.Civ.App.1989) (indicating that those factors suggest some permanency of relationship), the former wife and the alleged paramour saw each other five to six days a week, went on trips together to visit family members both in and outside Alabama, regularly spent holidays with each other’s families, and ate meals together at least three nights per week from October 2003 until the spring of 2008. On their trips together, the former wife and the alleged paramour shared expenses at times; the former wife testified that she sometimes paid for the alleged paramour’s meals and that he sometimes paid for hers. The former wife further testified that, on some trips, the alleged paramour paid for their lodging reservations on his credit card. The former wife and the alleged paramour have keys to each other’s residences, and the former wife said at trial that the alleged paramour knew the alarm code to her home, as well. When the alleged paramour twice had knee surgery, the former wife stayed the night in the hospital room with him; both the alleged paramour and the former wife had driven the other to and from the hospital for outpatient procedures. The alleged paramour is listed as the former wife’s emergency contact.
As mentioned in the main opinion, the former wife admitted that she and the alleged paramour drank wine together almost every night. She also admitted to eating meals with the alleged paramour regularly. She further admitted that she and the alleged paramour had spent the night together in the past, although she indicated that they never spent the night together at her home. And, yet, when asked whether her daughter had been present in June 2004 when the former wife and the alleged paramour had eaten a meal together and then retired to the alleged paramour’s home for the night, the former wife’s answer was evasive and non-responsive to the question; she answered “if that happened, yes, she could have.”
As noted above, the former wife admitted to consulting both statutory law and caselaw regarding cohabitation and alimony. She said that she and her alleged paramour had discussed the issue of her alimony and that they had discussed what things she and he could and could not do, based on the law regarding the .termination of alimony. The only testimony specifically indicating what changes the former wife and the alleged paramour made to their relationship after she was served with the petition to terminate alimony was the former wife’s admission that she had showered at the alleged paramour’s house at times before the petition to terminate alimony was filed, but not after. The former wife testified that she had ended her sexual relationship with the alleged paramour sometime in the spring of 2008; she was served with the former husband’s petition to terminate alimony in May 2008. In my opinion, the former wife admitted that the petition to terminate alimony compelled her and her alleged paramour to change the character of their relationship out of fear that her alimony would be terminated.
Thus, I would conclude that the former wife’s testimony is an admission that her relationship with her alleged paramour, before the changes in behavior they admit *93 tedly made, amounted to cohabitation under § 30-2-55. Coupled with the other evidence indicating that the former wife and her alleged paramour had had some permanency of relationship and had engaged in more than occasional sexual activity, see Ex parte Ward, 782 So.2d 1285, 1287 (Ala.2000), I believe the former wife’s admission that she changed her behavior in response to the former husband’s petition should compel a conclusion that the former wife was cohabiting with her alleged paramour at the time the former husband sought to have his alimony obligation terminated. I would, therefore, reverse the trial court’s judgment insofar as it declined to terminate the former husband’s alimony obligation based on the fact that the former wife was cohabiting with a member of the opposite sex.