BRYAN, Judge.
 

 Mary Yolanda Swindle (“the former wife”) appeals from a judgment of the Madison Circuit Court that terminated the periodic-alimony obligation of Jeffrey Lee Swindle (“the former husband”) to the former wife, that failed to modify child support, that failed to order the payment of child support and alimony arrearages, and that refused to find the former husband in contempt for failure to pay child support and periodic alimony.
 

 Facts and Procedural History
 

 The parties were divorced by the trial court on February 21, 2008. Pursuant to an agreement reached by the parties that was incorporated into the divorce judgment, the former husband was ordered to pay the former wife $1,600 a month as periodic alimony for a period of 18 months or until the former wife died, remarried, openly cohabitated with a member of the opposite sex, or the former husband retired from the military. The parties had two children: a girl, born in February 1991 (“the older child”), and another girl, born in July 1999 (“the younger child”) (hereinafter collectively referred to as “the children”). The divorce judgment awarded the parties’ joint legal custody of the children, and the former wife was awarded physical custody of the younger child and the former husband was awarded physical custody of the older child. The parties were awarded visitation rights with the child that was not in their physical custody. The divorce judgment ordered the former husband to pay $665 a month to the former wife for child support for the younger child; the judgment stated that the award of child support was a deviation from the Rule 32, Ala. R. Jud. Admin., child-support guidelines.
 

 On March 30, 2009, the former husband filed a petition to modify the divorce judgment. In his petition, the former husband alleged that his obligation to pay the former wife periodic alimony should be terminated because the former wife was cohabi-tating with a member of the opposite sex. The former husband also sought physical custody of the younger child and an award of child support from the former wife. The former husband also filed a separate request for emergency pendente lite relief that alleged that the former wife had “on a
 
 *1237
 
 regular and frequent basis” begun spending the night with a paramour and leaving the younger child with the former wife’s aunt and uncle (“the aunt and the uncle”) for extended periods.
 

 On April 23, 2009, the former wife filed an answer to the former husband’s petition to modify the divorce judgment. The former wife also filed a counterclaim and a petition seeking to hold the former husband in contempt. In her counterclaim, the former wife alleged that the older child had moved into her home, and she requested an order awarding her physical custody of the older child. The former wife also alleged that the former husband had not paid the full amount of periodic alimony owed to her in the months of March and April 2009 and that the former husband had used funds from the older child’s college fund for his personal use. The former wife sought recalculation of the former husband’s child-support obligation for two children, an income-withholding order for the former husband’s periodic-alimony obligation, a finding of contempt, and an award of her attorney’s fees.
 

 The trial court conducted a pendente lite hearing on May 22, 2009, and the following facts were presented.
 
 [1]
 
 The former wife testified that she and the younger child lived in the home of the aunt and the uncle, along with two of the aunt and the uncle’s children. The aunt and the uncle’s home was located in Dora, which, according to the former wife, is approximately 45 minutes outside Birmingham. The former wife testified that she provided money to help pay bills at the aunt and the uncle’s home, that she provided food for herself and the younger child, that she received her mail at the aunt and the uncle’s home, and that the aunt and the uncle’s home was her primary residence. The former wife was employed by the Jefferson County Board of Education as a special-education professional, and she was employed at a school in the Birmingham area.
 

 The former wife testified that she had begun dating a man (“the paramour”) in October 2008. The paramour lived in the Huntsville area. According to the former wife, she began staying with the paramour overnight soon after she began dating him and they had a sexual relationship. The former wife stated that she stayed at the paramour’s home when the younger child had visitation with the former husband, who also lived in Huntsville, approximately twice a month. The former wife stated that, on average, she stayed overnight with the paramour four times a month. According to the former wife, she had stayed overnight at the paramour’s home on weekdays when school was not in session, but the paramour had never stayed overnight at the aunt and the uncle’s home in Dora.
 

 The former husband testified that he, his wife, and his two stepchildren lived in Huntsville and that he was an active-duty officer in the United States Army. The former husband testified that he had exercised visitation with the younger child every first, third, and, when applicable, fifth weekend of each month. The former husband testified that he became aware that
 
 *1238
 
 the former wife was spending time at the paramour’s residence in late 2008 after the former wife requested that he meet her at a gas station across the street from the paramour’s residence and he witnessed the former wife drive into the apartment complex where the paramour lived.
 

 The former wife testified that she had occasionally cooked meals at the paramour’s home and that the paramour had loaned her a key to his residence, but she denied having a key to the paramour’s residence at the time of the pendente lite hearing. The former wife admitted that she had allowed the children to stay overnight at the paramour’s residence despite her knowledge that the divorce judgment prohibited her from doing so. The former wife testified that she had been on a vacation with the paramour to Savannah, Georgia, and that she and the paramour had shared a bedroom on that trip. She stated that she left her vehicle at the paramour’s residence during that trip and that she and the paramour were gone for approximately three days in March 2009. She denied that she was engaged to the paramour, although she admitted that they had discussed marriage. She testified that she did not receive mail at the paramour’s home, that she did not leave any personal items such as toiletries or clothing at the paramour’s home, that the paramour had not asked her to move into his home, and that she did not desire to move into the paramour’s home. The former wife stated that she had a loving relationship with the paramour and that she cared for him.
 

 Will Posey, an owner of Posey Investigations, testified that the former husband had hired him to conduct surveillance on the paramour’s residence. According to Posey, his surveillance team “checked” the paramour’s residence approximately 49 times between February 6, 2009, and March 23, 2009, and, according to Posey, the former wife or her vehicle were seen at the paramour’s residence 35 times. Po-sey’s video surveillance of the former wife at the paramour’s residence revealed that the younger child was with the former wife leaving the paramour’s residence on three occasions on a weekday before 7:00 a.m. However, Posey admitted that he did not take video footage of the younger child entering the paramour’s residence, and he admitted that the paramour’s residence, an apartment, had a separate entrance that was not monitored by his surveillance team. Posey stated that he had confirmed with the former husband that he did not have visitation with the younger child on the days that the younger child was present at the paramour’s residence, indicating that it was unlikely that the child was present at the paramour’s residence because the former husband had dropped her off at the paramour’s residence after exercising visitation with the younger child in Huntsville.
 

 Ryan Gillispie, a private investigator, testified that he had conducted surveillance on the former wife at the paramour’s residence. Gillispie stated that he had been to the paramour’s residence 13 times between February 8, 2009, and March 9, 2009, and that he saw the former wife at the paramour’s home on 12 of those 13 occasions. Gillispie stated that the former wife stayed overnight at the paramour’s home on 7 of the 12 occasions that he saw the former wife. Gillispie also stated that he witnessed the former wife using a key to enter the paramour’s home when the paramour was not at his home and that he had witnessed the former wife shopping for groceries in Huntsville.
 

 At the conclusion of the pendente lite hearing, the trial-court judge stated: “[A]t this time I am not reasonably satisfied that there has been open cohabitation as that is defined in the statute by [the former wife]
 
 *1239
 
 and [the paramour]. That doesn’t mean that couldn’t change at the final hearing, but right now [the periodic-alimony] provision will [remain] unmodified.” The trial court entered a pendente lite order on May 29, 2009, that awarded the former husband primary “care, custody, and control” of the younger child beginning on the younger child’s last day of school (May 29), subject to the former wife’s visitation rights. The trial court noted that its order provided the former husband with relief that he was already entitled to pursuant to the parties’ divorce judgment, which allowed the former husband to have summer visitation with the younger child beginning on the afternoon of the last day of school until the end of the younger child’s summer vacation.
 
 [2]
 
 The pendente lite order stated that the provisions of the divorce judgment “shall be followed without exception.”
 

 On June 26, 2009, the former wife filed a second motion for contempt. The former wife alleged that the former husband had not paid his periodic-alimony obligation for the months of March, April, May, or June 2009. She also alleged that the former husband had failed to pay his child-support obligation in the month of June 2009.
 

 The trial court conducted a final hearing on July 16, 2009. Because the pendente lite hearing had been conducted less than two months before the final hearing, and because the former husband had presented a majority of his evidence regarding the former wife’s alleged cohabitation with her paramour during that hearing, the former husband presented little additional testimony in an effort to prove his allegation that the former wife was cohabitating with a member of the opposite sex. However, during the final hearing, the former wife admitted that she had stayed overnight at the paramour’s residence for the first two weeks of June 2009, following the entry of the pendente lite order. The former wife testified that she could not recall how often she had stayed overnight with the paramour after the first two weeks of June, but, she testified, “to the best of [her] knowledge,” she had not stayed with the paramour since the first two weeks of June.
 

 The former wife admitted that the testimony of the private investigators had contradicted the testimony she had presented at the pendente lite hearing, specifically, her testimony regarding the fact that she spent, on average, four nights a month with the paramour. The former wife explained that the paramour had been out of town in January, so she had spent more time than usual at the paramour’s home in February. The former wife maintained that she did not cohabitate with the paramour and that she lived with the aunt and the uncle in Dora.
 

 The former husband testified that he had not paid the former wife alimony for March, April, May, June, or July 2009 and that he had not paid child support for the younger child for June or July 2009 because he had custody of the younger child during those months. The former husband submitted a CS^il Child-Support-Obligation Income Statement/Affidavit, which demonstrated that his monthly gross income was $7,534.44 and that he paid $30.29 a month for health insurance for the children. The former wife present
 
 *1240
 
 ed evidence indicating that her monthly gross income was $1,487.67 a month.
 
 [3]
 

 On July 29, 2009, the trial court entered a judgment that denied the former husband’s petition to modify custody of the younger child, and the judgment stated that the parties had agreed that the former wife would have physical custody of the older child as well. The trial court found that the former husband had presented evidence sufficient to require that his periodic-alimony obligation to the former wife be terminated. In its judgment, the trial court stated that it was “clear that the [former wife] ha[d] openly cohabitated with a man. While the living arrangements were not on a permanent basis, their time together overnight was frequent and more than mere occasional dating.” The judgment terminated the former husband’s periodic-alimony obligation effective March 30, 2009. The judgment specifically denied all other relief requested by the parties.
 

 The former wife filed a post-judgment motion that challenged the trial court’s failure to order the former husband to pay child support for the children and its failure to order the former husband to pay child-support arrearage that had accumulated in June and July 2009. The trial court denied the former wife’s post-judgment motion on September 24, 2009. On October 6, 2009, the former wife purported to file a “motion to reconsider,” which requested that the trial court reconsider its denial of her postjudgment motion.
 
 [4]
 
 The former wife filed a timely notice of appeal on November 4, 2009.
 
 [5]
 

 Issues
 

 On appeal, the former wife presents six issues for review by this court: (1) whether the trial court erred by terminating the former husband’s periodic-alimony obligation; (2) whether the trial court erred by failing to recalculate the former husband’s child-support obligation; (3) whether the trial court erred by failing to order the payment of the child-support arrear-age; (4) whether the trial court erred by failing to order the payment of the periodic-alimony arrearage; (5) whether the trial court erred by failing to find the former husband in contempt; and (6) whether the trial court erred by failing to consider the former wife’s allegations regarding the former husband’s use of the older child’s college fund.
 

 Standard of Review
 

 “When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust,
 
 *1241
 
 or against the great weight of the evidence.
 
 J & M Bail Bonding Co. v. Hayes,
 
 748 So.2d 198 (Ala.1999);
 
 Gaston v. Ames,
 
 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court ‘will assume that the trial judge made those findings necessary to support the judgment.’
 
 Transameriea Commercial Fin. Corp. v. AmSouth Bank,
 
 608 So.2d 375, 378 (Ala.1992). Moreover, ‘[ujnder the
 
 ore terms
 
 rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.’
 
 Transameriea,
 
 608 So.2d at 378. However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court’s judgment.
 
 Allstate Ins. Co. v. Skelton,
 
 675 So.2d 377 (Ala.1996);
 
 Marvin’s, Inc. v. Robertson,
 
 608 So.2d 391 (Ala.1992);
 
 Gaston,
 
 514 So.2d at 878;
 
 Smith v. Style Advertising, Inc.,
 
 470 So.2d 1194 (Ala.1985);
 
 League v. McDonald,
 
 355 So.2d 695 (Ala.1978).... This court reviews the application of law to facts de novo.
 
 Allstate,
 
 675 So.2d at 379 (‘[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.’).”
 

 City of Prattville v. Post,
 
 831 So.2d 622, 627-28 (Ala.Civ.App.2002).
 

 Discussion
 

 On appeal, the former wife first argues that the trial court erred by terminating the former husband’s periodic-alimony obligation.
 

 “ ‘It is a question of fact for the trial court to determine as to whether a former spouse is living openly or cohabiting with a member of the opposite sex in order to authorize a termination of periodic alimony under § 30-2-55, Code of Alabama 1975. The burden of proof as to that matter is upon the party seeking relief under the code section. The trial court’s decision upon that issue will not be revised upon an appeal unless, after considering all the evidence and the reasonable inferences therefrom, the trial court was palpably wrong.’
 

 “Knight v. Knight,
 
 500 So.2d 1113, 1115 (Ala.Civ.App.1986). ‘[C]ohabitation requires some permanency of relationship coupled with more than occasional sexual activity between the cohabitants.’
 
 Hicks v. Hicks,
 
 405 So.2d 31, 33 (Ala.Civ.App.1981);
 
 see also Vaughn v. Vaughn,
 
 507 So.2d 960 (Ala.Civ.App.1987). Direct evidence of sexual intercourse is rarely available, but ‘sexual intercourse can be inferred from a chain of circumstances.’
 
 Penn v. Penn,
 
 437 So.2d 1053, 1055 (Ala.Civ.App.1983);
 
 see also Kennedy v. Kennedy,
 
 598 So.2d 985 (Ala.Civ.App.1992). To evaluate the permanency of a relationship to determine whether a former spouse is cohabiting with a member of the opposite sex, this court has considered whether the former spouse is sharing a dwelling with a member of the opposite sex; whether the former spouse has ceased to date other members of the opposite sex; payment of the former spouse’s creditors by a member of the opposite sex; and the purchase of clothes for the former spouse by a member of the opposite sex.
 
 Knight v. Knight,
 
 500 So.2d at 1115.”
 

 McNatt v. McNatt,
 
 908 So.2d 944, 945-46 (Ala.Civ.App.2005).
 

 On appeal, the former wife argues that because the trial court was not reasonably satisfied following the pendente lite hearing that the former husband had demonstrated that the former wife was
 
 *1242
 
 openly cohabitating with a member of the opposite sex, and because, the wife alleges, no new evidence was presented by the former husband at the final hearing, the trial court erroneously terminated the former husband’s periodic-alimony obligation. The former wife also argues that the former husband conceded that she was not cohabitating with the paramour because, while questioning the former wife during the final hearing and at the pendente lite hearing, the former husband’s attorney made comments to the effect that the former wife was residing in Dora with the aunt and the uncle. However, our review of the record reveals that the former husband maintained, throughout the proceedings below, that the former wife was coha-bitating with the paramour and that the former husband did present additional evidence at the final hearing that could have supported the trial court’s determination that the former wife was cohabitating with a member of the opposite sex.
 

 As the former wife argues, the evidence reflected that the former wife maintained a residence in Dora at the aunt and the uncle’s home and that that residence was where she paid rent, received mail, and lived with the children. Despite the fact that undisputed evidence indicated that the paramour did not pay the former wife’s creditors and that the former wife did not keep any of her personal belongings at the paramour’s residence, the former husband presented evidence that could have supported a conclusion that the former wife was cohabitating with a member of the opposite sex, within the meaning of § 80-2-55, Ala.Code 1975. It was undisputed that the former wife was engaging in a sexual relationship with the paramour, and the former husband presented other evidence that could have led to a conclusion by the trial court that there was some permanency to the relationship between the former wife and the paramour. For example, from the evidence presented by the former husband, the trial court could have reasonably inferred that the former wife had ceased to date other members of the opposite sex. Furthermore, although the evidence indicated that the former wife did not permanently live with the paramour, the trial court could have reasonable inferred that the former wife’s relationship with the paramour had indicia of permanency because of the frequency and continuity of the former wife’s overnight stays.
 

 “ ‘In giving [§ 30-2-55] a rational, sensible construction, we find the legislature intended to strike a balance between the occasional brief sojourn and the common-law marriage. Thus, while not every occurrence of postmarital un-chastity by a former spouse will bar the right to alimony, a petitioner need not prove the former spouse is habitually living with another and that the couple consider themselves married.’ ”
 

 Ex parte Ward,
 
 782 So.2d 1285, 1287 (Ala.2000) (quoting
 
 Parish v. Parish,
 
 374 So.2d 348, 349 (Ala.Civ.App.1979)).
 

 We acknowledge that there is a large “grey” area between an “occasional brief sojourn” and a common-law marriage, as described in
 
 Ex parte Ward, supra.
 
 This court has declined to set forth a bright-line test that would establish when a former spouse is cohabitating with a member of the opposite sex. Instead, the appellate courts have relied on the broad discretion afforded to trial courts when making a factual determination that a former spouse is or is not cohabitating with a member of the opposite sex. In fact, this court has held that
 

 “[b]ecause the ore tenus rule applies to the trial court’s findings, the trial court’s judgment as to whether the former wife was cohabitating with a mem
 
 *1243
 
 ber of the opposite sex within the meaning of § 30-2-55 will be affirmed by this court ‘ “if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.” ’
 
 [McNatt v. McNatt,
 
 908 So.2d] at 945 [ (Ala.Civ.App.2005) ] (quoting
 
 Trans-america Commercial Fin. Corp. v. Am-South Bank, N.A.,
 
 608 So.2d 375, 378 (Ala.1992)).”
 

 Scott v. Scott,
 
 38 So.3d 79, 84 (Ala.Civ.App.2009).
 

 The former husband presented credible evidence indicating that the former wife was engaged in a sexual relationship with the paramour and that their relationship was of a permanent nature. The former wife testified that she had a loving relationship with the paramour; that she had traveled out of state with the paramour and had shared a hotel room; and that the paramour, at least at some point in his relationship with the former wife, had given the former wife a key to his residence. The trial court could have reasonably inferred from this evidence that the former wife’s relationship with the paramour went beyond “occasional” sexual activity.
 

 We recognize that caselaw exists that
 
 affirms
 
 a determination that a former spouse was not cohabitating despite evidence indicating that the former spouse had a regular social and sexual companion.
 
 See Rutland v. Rutland,
 
 494 So.2d 662 (Ala.Civ.App.1986). In
 
 Rutland,
 
 we held that such evidence does not
 
 require
 
 a finding that a former spouse was cohabitating within the meaning of § 30-2-55. 494 So.2d at 663-64. However, nothing in
 
 Rutland
 
 suggests that a trial court, in its discretion, may not conclude that a former spouse is cohabitating when evidence of a regular social and sexual companion exists. Accordingly, because under one reasonable aspect of the testimony the trial court’s judgment was supported by credible evidence, we cannot conclude that the trial court’s determination that the former wife had cohabitated with a member of the opposite sex was palpably wrong.
 

 The former wife next argues that the trial court erred by failing to modify the former husband’s child-support obligation in light of the fact that the July 2009 judgment awarded the former wife physical custody of both the children. We agree. In her pleadings and in her post-judgment motion, the former wife requested recalculation of the former husband’s child-support obligation in the event that the former wife was awarded physical custody of both the children. Pursuant to the parties’ divorce judgment, the former husband was ordered to pay $665 a month for the support of the younger child; the final judgment in the present case did not modify that award. We conclude that the trial court’s judgment is due to be reversed for failing to recalculate the award of child support after the former wife was awarded custody of both the children. On remand, we instruct the trial court to recalculate the former husband’s child-support obligation that would have been due as of the date that the July 2009 judgment was entered.
 
 [6]
 

 The former wife also argues that the trial court erroneously failed to order the payment of the child-support arrearage that had accumulated in June and July 2009. At the final hearing, the former husband admitted that he had not paid child support to the former wife in June and July 2009. The former husband
 
 *1244
 
 testified that he did not pay child support to the former wife because he had exercised physical custody of the younger child during those months. However, as noted by the trial court at the conclusion of the pendente lite hearing, the pendente lite award allowed what had already been ordered in the divorce judgment, i.e., that the former husband exercise physical custody of the younger child during her summer vacation. Furthermore, the pendente lite order did not relieve the former husband of his obligation to pay child support pursuant to the divorce judgment but, instead, specifically stated that all provisions of the divorce judgment were required to be followed. It is well settled that monthly installments of child support become final judgments as of the date they are due.
 
 Hollen v. Conley,
 
 840 So.2d 921, 924 (Ala.Civ.App.2002). Thus, we conclude that the trial court erred by failing to require the former husband to pay the child-support arrearage that accumulated during June and July 2009. Accordingly, we remand the cause to the trial court for entry of an order requiring the former husband to pay the child-support arrear-age, plus interest, that accumulated during June and July 2009.
 
 See Hollen v. Conley, supra.
 

 [7]
 

 Finally, the former wife argues that the trial court erroneously failed to order the payment of the alimony arrear-age, erroneously failed to find the husband in contempt, and erroneously failed to rule on the issue regarding the older child’s college fund. In support of the three issues listed above, the former wife cites Ala.Code 1975, § 30-3-5, which sets forth the appropriate venue for an action seeking modification of child support, among other things, and Ala.Code 1975, § 30-3B-106, which is part of the Uniform Child Custody Jurisdiction and Enforcement Act, § 30-3B-101 et seq., Ala.Code 1975 (“the UCCJEA”), and sets forth the effect of a child-custody determination made pursuant to the UCCJEA. However, the former wife did not argue below, and she does not argue on appeal, an issue regarding venue or jurisdiction. The former wife also cites Rule 60(b), Ala. R. Civ. P., for the proposition that the trial court had jurisdiction-to correct clerical errors in its judgment. The former wife does not present this court with any analysis as to how Rule 60(b), § 30-3-5, or § 30-3B-106 support reversal of the trial court’s judgment regarding the issues listed above.
 

 “Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and
 
 relevant
 
 legal authorities that support the party’s position. If they do not, the arguments are waived.
 
 Moore v. Prudential Residential Servs. Ltd. P’ship,
 
 849 So.2d 914, 923 (Ala.2002);
 
 Arrington v. Mathis,
 
 929 So.2d 468, 470 n. 2 (Ala.Civ.App.2005);
 
 Hamm v. State,
 
 913 So.2d 460, 486 (Ala.Crim.App.2002). ‘This is so, because “ ‘it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” ’
 
 Jimmy Day Plumbing & Heating, Inc. v. Smith,
 
 964
 
 *1245
 
 So.2d 1, 9 (Ala.2007) (quoting
 
 Butler v. Town of Argo,
 
 871 So.2d 1, 20 (Ala.2003), quoting in turn
 
 Dykes v. Lane Trucking, Inc.,
 
 652 So.2d 248, 251 (Ala.1994)).”
 

 White Sands Group, L.L.C. v. PRS II, LLC,
 
 998 So.2d 1042, 1058 (Ala.2008) (emphasis added).
 

 Because the former wife’s brief does not comply with Rule 28(a)(10), Ala. R.App. P., insofar as she argues that the trial court erred by failing to order the former husband to pay the alimony arrear-age, that the trial court erred by failing to find the former husband in contempt, and that the trial court erred by failing to rule on the issue regarding the older child’s college fund, we will not address those arguments. Accordingly, the trial court’s judgment regarding those particular issues is due to be affirmed.
 

 Conclusion
 

 The judgment of the trial court, insofar as it failed to recalculate the former husband’s child-support obligation and failed to order the former husband to pay his child-support arrearage, is due to be reversed; all other aspects of the trial court’s judgment are due to be affirmed. We remand this cause with instructions to enter an order consistent with this opinion. The former wife’s motion to strike the former husband’s brief on appeal is denied, and the former wife’s request for an attorney’s fee on appeal is denied.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, J., concur.
 

 THOMAS and MOORE, JJ., concur in the result, without writings.
 

 [1]
 

 . The former husband presented evidence regarding his allegation that the former wife was cohabitating with a member of the opposite sex during the pendente lite hearing in support of his emergency motion for pendente lite custody. The final hearing, regarding contempt, custody modification, and alimony modification, was conducted less that two months after the pendente lite hearing, and, to avoid repetition, the former husband did not offer the same testimony that he had presented at the pendente lite hearing. Thus, a detailed summary of the evidence presented by the parties at the pendente lite hearing is set forth.
 

 [2]
 

 . The parties’ divorce judgment provided that the former wife would have 10 consecutive days of summer visitation; however, the trial court did not allow the former wife to exercise this specific form of visitation following the entry of the pendente lite order. The former wife was allowed visitation on the second and fourth weekends of each month during the child’s summer vacation.
 

 [3]
 

 .After the trial-court judge adjourned the final hearing, the former wife’s attorney attempted to discuss matters related to a college fund that had been established for the older child. The former wife's attorney pointed out that the former wife had alleged in a counterclaim that the former husband may have been using the fund for his personal use. However, the trial-court judge refused to hear evidence regarding the college fund because the former wife had failed to present any evidence regarding the college fund, or otherwise mention the college fund, during the final hearing.
 

 [4]
 

 . We note that, generally, successive post-judgment motions are not permitted by the Alabama Rules of Civil Procedure.
 
 See Kimbrell v. Kimbrell,
 
 965 So.2d 789, 793 (Ala.Civ.App.2007).
 

 [5]
 

 . The former wife's notice of appeal was timely filed because it was filed 41 days after the trial court denied her postjudgment motion on September 24, 2009.
 
 See
 
 Rule 4(e), Ala. R.App. P.
 

 [6]
 

 . We acknowledge that the older child attained the age of majority in February 2010. However, the former wife properly preserved the issue of child support for appeal, and the record on appeal demonstrates that the trial court erroneously failed to recalculate the former husband's child-support obligation in light of the July 2009 judgment.
 

 [7]
 

 . We note that the former husband did not present any evidence of the actual support he provided to the younger child during June and July 2009, which would have supported a determination that the former husband receive a credit toward his child-support arrear-age. The fact that the former husband exercised physical custody of the younger child during June and July 2009 is insufficient evidence, by itself, to support a credit. See
 
 State ex rel. Killingsworth v. Snell,
 
 681 So.2d 620, 621 (Ala.Civ.App.1996) (stating that the award or denial of a child-support credit is within the sound discretion of the trial court, but noting that "the party seeking the credit against an arrearage must present proof as to the amount of the credit sought”).