THOMAS, Judge.
Sharon Jaynae Bishop (“the former wife”) appeals from a judgment of the Mobile Circuit Court terminating the periodic-alimony obligation of Ervin Edward Bishop (“the former husband”) after it determined that the former wife had cohabited with a member of the opposite sex, pursuant to § 30-2-55, Ala.Code 1975.[1] We reverse and remand.
*540 The former husband and the former wife were divorced in February 2008 by a judgment of the trial court. One of the provisions of the divorce judgment required the former husband to pay the former wife $500 per month in periodic alimony pending the sale of the marital residence and $1,500 per month in periodic alimony after the sale of the marital residence. At all times relevant to these proceedings the former wife was still occupying the marital residence.
On June 3, 2009, the former husband moved the trial court to terminate his periodic-alimony obligation, alleging that the former wife was cohabiting with a member of the opposite sex, within the meaning of § 30-2-55.[2] The former wife answered the former husband’s motion, denying that she was cohabiting with a member of the opposite sex. The trial court held a hearing on the former husband’s motion on November 22, 2009, at which it heard ore tenus evidence. On November 30, 2009, the trial court entered a judgment granting the former husband’s motion to terminate his periodic-alimony obligation. Thereafter, the former wife filed a post-judgment motion, pursuant to Rule 59(e), Ala. R. Civ. P., which the trial court denied after a hearing. The former wife subsequently appealed to this court.
The former wife argues that the trial court erred when it terminated the former husband’s periodic-alimony obligation because, she says, the evidence was insufficient for the trial court to determine that she had cohabited with a member of the opposite sex.
“It is a question of fact for the trial court to determine as to whether a former spouse is living openly or cohabiting with a member of the opposite sex in order to authorize a termination of periodic alimony under § 30-2-55, Code of Alabama 1975. The burden of proof as to that matter is upon the party seeking relief under that code section. The trial court’s decision upon that issue will not be revised upon an appeal unless, after considering all of the evidence and the reasonable inferences therefrom, the trial court was palpably wrong. Rutland. v. Rutland, 494 So.2d 662 (Ala.Civ.App.1986); Capper v. Capper, 451 So.2d 359 (Ala.Civ.App.1984); Penn v.Penn, 437 So.2d 1053 (Ala.Civ.App.1983); Peterson v. Peterson, 403 So.2d 236 (Ala.Civ.App.), cert. denied, 403 So.2d 239 (Ala.1981).
“ ‘Based upon the foregoing authorities and common usage, it is apparent that cohabitation requires some permanency of relationship coupled with more than occasional sexual activity between the cohabitants. In previous cases before this court in which alimony has been terminated pursuant to § 30-2-55, this permanency of relationship has manifested itself by the former spouse sharing a dwelling with a member of the opposite sex. Blackwell v. Blackwell, 383 So.2d 196 (Ala.Civ.App.1980); Ivey v. Ivey, 378 So.2d 1151 (Ala.Civ.App.1979); Parish v. Parish, 374 So.2d 348 (Ala.Civ.App.1979); cert. denied, 374 So.2d 351 (Ala.1979); Atkinson v. Atkinson, 372 So.2d 1106 (Ala.Civ.App.1979). Other *541 factors, previously considered by this court, which indicate a permanency of relationship include ceasing to date other members of the opposite sex, Atkinson v. Atkinson, supra; payment of the former spouse’s creditors by a member of the opposite sex, Parish v. Parish, supra; and purchase of clothes for the former spouse by a member of the opposite sex, Parish v. Parish, supra.’ ”
Knight v. Knight, 500 So.2d 1113, 1115 (Ala.Civ.App.1986) (quoting Hicks v. Hicks, 405 So.2d 31, 33 (Ala.Civ.App.1981)).
Edward Jannis (“the paramour”) testified that he was currently involved in a sexual relationship with the former wife that began about a year and a half before the trial. According to the paramour, the former wife would stay at his house, on average, “a couple of long weekends a month,” but, he stated, there had been one time when he and the former wife had not seen each other for a month and another time when they had not seen each other for two months. The paramour further testified the he and the former wife had, at times, vacationed together for a week or longer, including a trip to the Florida Keys that was two or three weeks in duration. According to the paramour, his relationship -with the former wife was not exclusive; he continues to date other women. The paramour also testified that he and the former wife have no plans to get married. The paramour testified that he had not paid any of the former wife’s bills or expenses, that the former wife did not receive any mail at his address, that she did not have a key to his house, and that she did not leave any clothing or personal effects at his house. The paramour further testified that he and the former wife do not have any bank accounts together or own any property together.
The former -wife testified that her relationship with the paramour was substantially as testified to by him. According to the former wife, she spent some weekends at the paramour’s house and they went on a “couple of trips together.” The former wife testified that the paramour had not paid any of her bills or expenses, that she did not receive any mail at the paramour’s address, that she did not leave any personal effects or clothing at the paramour’s house, that she did not have a key to the paramour’s house, that she did not use the paramour’s address for any purposes, and that she and the paramour did not own any property together or have any joint bank accounts. The former wife testified that the only gift the paramour had given her was a Nintendo Wii video-game system. The former wife stated that the paramour occasionally provided her with dinner or breakfast while she was at his house. Although the former wife testified that she had generally only spent some weekends at the paramour’s house, the former husband entered into evidence the former wife’s credit-card statements, which showed some purchases in Destín, Florida, where the paramour resides, on weekdays. In response, the former wife stated that she did not keep track of the exact days that she was at the paramour’s house.
The former husband testified that the former wife was often not at the former marital residence over the 20-month period before the trial. The former husband testified that he had driven by the former marital residence 4 or 5 days each week since the divorce and that the former wife was absent 86% of the times in 2008 that he had driven by and 85% of the times that he had driven by in 2009. The former husband stated that Colin Bishop, the parties’ daughter, was also not at the former marital home 50 to 70% of the times that *542 he went by the former marital residence. The former husband testified that he had concluded that the former wife was out of town when she was not at home because his children “tell [him] a lot of things.” The former husband further testified that he had driven by the paramour’s house four times since the divorce and had photographed the former wife’s automobile in the driveway on each of those occasions. According to the former husband, he had the former wife served with the motion to terminate alimony at the paramour’s house.
Jared Hicks, who has been involved in a romantic relationship with Colin since September 2008, testified that he was at the former marital residence for some part of the day five days a week and that he spent the night there two or three times a week. Hicks testified that the former wife was often not there; he stated that the former wife would arrive at the former marital residence on Wednesday and then leave again “sometimes on Thursday or Friday.” Hicks testified that the former wife had told him that when she was not at the former marital residence she was in Des-tín, Florida, at the house belonging to the paramour. According to Hicks, the mother would pack a bag containing clothing when she would leave, but, he stated, she never told him that she was living in Des-tín. Hicks stated that during a time when the former wife did not have an automobile, the paramour would drive her to the former marital residence. Hicks stated that he twice visited the paramour’s house: one time when he spent the night, along with Colin and the former wife, and one time when he went to pick up the former wife after she and the paramour had a disagreement. Hicks also testified that the former wife was absent from the former marital residence for a period that he estimated was about a month; Hicks stated that she was on vacation with the paramour during that time. Hicks further testified that the paramour had given the former wife a Nintendo Wii video-game system as a Christmas present and that, in return, the former wife had given the paramour a diving suit.
Colin testified that the former wife would stay at the paramour’s house every other weekend or a few weekends a month; Colin stated that the former wife was home most weekdays. Colin further testified that the former wife had once gone on a vacation with the paramour for two weeks. According to Colin, the paramour had stayed the night at the former marital residence four times. Colin estimated that the former wife had been absent from the former marital residence about 60 or 70% of the time; Colin explained that the former wife often had to travel out of town for work. According to Colin, the former wife has her bank accounts with a bank near the former marital residence, receives her mail at the former marital residence, and goes to a doctor near the former marital residence. Colin testified that the only thing she knew that the paramour had bought the former wife was a Nintendo Wii and an occasional dinner. Colin also testified that Hicks would spend the night at the former marital residence, but typically only when the former wife was not at home. According to Cohn, the former husband had only visited the former marital residence occasionally since the parties’ divorce.
In Knight, this court reversed a trial court’s determination that the former wife in that case had cohabited with a man. This court stated:
“Both Mrs. Knight and Mr. Cole maintain separate residences. There is no evidence that either of them kept any clothing or other personal effects in the *543 other’s home, or that either had a key to the other’s house. Neither contributed anything toward the other’s debts, expenses or support. There was no evidence that they ever used the address of the other for mail, or any other purpose. They have never held themselves out as husband and wife. The evidence is silent as to either party doing any chores, making any repairs, or performing any maintenance upon the other’s house or property. While Mrs. Knight and Mr. Cole are regular social companions and sexual lovers who intend to marry, those facts do not require a finding that she is living or cohabiting with him Rutland [v. Rutland ] [494 So.2d 662 (Ala.Civ.App.1986) ]; Peterson [v. Peterson ] [403 So.2d 236 (Ala.Civ.App.1981) ]. As in Hicks [v. Hicks ] [405 So.2d 31 (Ala.Civ.App.1981) ], the factors indicating cohabitation are not present in this case.”
Knight, 500 So.2d at 1116.
In Swindle v. Swindle, 55 So.3d 1234, 1243 (Ala.Civ.App.2010), this court affirmed a trial court’s determination that the former wife in that case was cohabiting with a man because we concluded that there was evidence showing that the trial court had credible evidence “indicating that the former wife [in that case] was engaged in a sexual relationship with the paramour and that their relationship was of a permanent nature.” As indicia of permanency in that case, we noted that the trial court had evidence from which it could infer that the relationship was exclusive and that the man had given the former wife a key to his house.
In this case, the trial court had evidence before it from which it could find that the former wife and the paramour spent a significant amount of time together at the paramour’s house and that they had vacationed together. However, unlike in Swindle, important evidence of permanency in the relationship is missing in this case. The paramour testified that the relationship was not exclusive; he testified that he continued to see other women. The former wife and the paramour both testified that neither of them had a key to the other’s house. There was no contradictory evidence in the record on those two points. Additionally, there was no evidence indicating that the former wife or the paramour kept any clothing or personal effects at the other’s house, that either materially contributed to the other’s debts, expenses, or support, or that either received mail at the other’s house. In summary, none of the factors that would show permanency in the relationship are present in this case. As such, this case is closer to Knight than to Swindle. Consequently, the lack of evidence showing the existence of permanency in the relationship forecloses the possibility that the trial court could have properly determined that the former wife and the paramour were cohabiting. See Knight, 500 So.2d at 1116. Therefore, we reverse the trial court’s judgment terminating the former husband’s periodic-alimony obligation.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
MOORE, J., concurs in the result, without writing.
BRYAN, J., dissents, with writing.

. Section 30-2-55, Ala.Code 1975, provides: "Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting *540 with a member of the opposite sex. This provision shall be applicable to any person granted a decree of divorce either prior to April 28, 1978, or thereafter; provided, however, that no payments of alimony already received shall have to be reimbursed.”

. The former husband also moved the trial court to grant him exclusive possession of the marital residence. The trial court denied the former husband's motion; that denial is not at issue in this appeal.