KENNEDY, Justice.
This is an appeal from a judgment entered in favor of Elizabeth J. Eubanks by the Circuit Court of Madison County, following a nonjury trial.
Eubanks sued Glenn Engineering Company (the predecessor of Glenn Technology, Inc.) and C. Lamar Bannister, claiming breach of contract, fraud, misrepresentation, breach of fiduciary duty, and corporate waste. Glenn Engineering and Bannister generally denied all of the allegations and counterclaimed, alleging fraud in the inducement concerning a sale of stock.

Facts

This dispute arose out of an agreement between Ms. Eubanks and Mr. Bannister regarding the purchase of Ms. Eubanks’s stock in Glenn Engineering.
Glenn Engineering operated as a machine shop, manufacturing precision parts, tooling, and molds, and doing drafting design work. Ms. Eubanks owned stock in and worked for Glenn Engineering in various positions from 1975 until June 1986. Ms. Eubanks’s husband, Donald, was president of Glenn Engineering from 1974 to July 1985 and was its principal designer, toolmaker, and operations overseer. The Eubankses divorced in 1983 but continued to work together. In 1985, Ms. Eubanks became president and undertook the primary operational responsibility for Glenn Engineering, because her former husband was very ill. When she became president, Ms. Eubanks owned 52% of the outstanding stock.
In 1984, Glenn Engineering moved its headquarters to property owned by Dee Properties, a partnership consisting of Ms. Eubanks and Mr. Eubanks. Glenn Engineering paid rent to Dee Properties for the lease of the space pursuant to a year-to-year lease agreement.
Dee Properties borrowed money from Colonial Bank and, in turn, lent money to Glenn Engineering to provide operating capital. The loan was evidenced by a promissory note, executed on June 17, 1985, payable to the order of Dee Properties, or of the holder, in the amount of $160,000, plus interest at a rate of 13%. On August 16, 1985, Glenn Engineering executed another promissory note payable to Ms. Eubanks, or the holder, in the amount of $30,734.95, plus interest. The interest rate on this note was to equal the rate charged by First Alabama Bank, from which Ms. Eubanks had borrowed the $30,-734.95 to lend to Glenn Engineering. The purpose of the loan from Ms. Eubanks was also to provide operating capital.
Ms. Eubanks decided to sell her stock in Glenn Engineering because of the continuing health problems of both Ms. Eubanks and Mr. Eubanks. Their illnesses substantially interfered with their ability to manage Glenn Engineering.
Bannister alleged that Ms. Eubanks contacted him concerning a potential sale of her stock. Bannister indicated to Ms. Eu-banks that he would need to evaluate certain financial data concerning Glenn Engineering in order to determine whether to purchase the stock and, if so, at what price. Bannister alleged that he then viewed an appraisal of the machinery owned by Glenn Engineering dated April 16, 1985, and balance sheets for Glenn Engineering for the period ending December 31, 1985, and for the period ending May 31, 1986.
There were actually two financial statements for the period ending May 31, 1986. One version contained an entry for “tooling” under current assets and valued the tooling at $51,428.00. The second version contained an entry for “finished goods,” also valued at $51,428.00. “Tooling” is the equipment required to manufacture a particular product. “Finished goods” are the products that make up a company’s inventory. According to Glenn Engineering’s accountant, the machinery in question could be defined either as an asset or as inventory, depending upon the accounting classification used.
Ms. Eubanks alleges that Bannister contacted her about the possible purchase of her stock in Glenn Engineering. Ms. Eu- *565 banks contends that she notified Bannister of cash flow problems, a need for capital infusion, and the need for a full-time salesman. Ms. Eubanks also stated that she told Bannister to review the financial books and records and that she gave him the opportunity to do so.
Several meetings were held between Ms. Eubanks, Glenn Engineering’s accountant, and Bannister. Bannister’s own accountant reviewed the financial records and advised Bannister that the purchase was acceptable.
After several communications, Ms. Eu-banks and Bannister entered into a memorandum of intent on June 20, 1986, for the sale of Ms. Eubanks’s stock in Glenn Engineering. The “memorandum of intent” agreement included the following pertinent terms: the purchase price of Ms. Eu-banks’s shares of stock in Glenn Engineering was to be $200,000; Bannister agreed to pay the promissory note payable to Dee Properties; Glenn Engineering agreed to continue to rent the building from Dee Properties at $4,000 per month, and Ms. Eubanks agreed to step down as an officer and a director of Glenn Engineering.
On June 27, 1986, Bannister and Ms. Eubanks executed a formal stock purchase agreement. Ms. Eubanks accepted $65,000 as a down payment on the purchase of her stock. On June 30, 1986, Bannister executed a promissory note payable to Ms. Eubanks in the amount of $135,000 as the remainder of the $200,000 purchase price. No formal lease agreement concerning Glenn Engineering’s paying rent on the building belonging to Dee Properties was executed.
Glenn Engineering made payments on the $160,000 promissory note and the $30,-734.00 promissory note through February 1987. Bannister made no payments on the promissory note executed in exchange for Ms. Eubanks’s stock. Without dispute, all three promissory notes were in default. In accordance with the “memorandum of intent,” Glenn Engineering paid rent of $4,000 per month to Dee Properties for July, August, and September 1986. For six months, beginning in October 1986, Glenn Engineering paid Dee Properties a reduced rent of $3,000 per month. Dee Properties received no rent from Glenn Engineering for the months of April, May, June, July, and August 1987. Glenn Engineering vacated the building owned by Dee Properties in August 1987.
On November 15, 1989, the court entered its findings and judgment. The court found that Glenn Engineering had defaulted on the June 17, 1985, promissory note and that Dee Properties was entitled to recover $111,180.74, the balance of the indebtedness, including interest, under that note. The court also found that Glenn Engineering had defaulted on the August 16, 1985, promissory note and owed the balance of that debt, interest included, of $28,554.46, to Ms. Eubanks. The court found that Bannister had defaulted on the June 30, 1986, promissory note and owed $195,289.54, representing the balance plus accrued interest, to Ms. Eubanks. The court also awarded Ms. Eubanks attorney fees in the amount of 15% of the unpaid balance for each of the three notes. The court specifically held that Bannister was not obligated to pay rent on the building belonging to Dee Properties and was not obligated to enter into a lease agreement with Dee Properties. Also, it held that Ms. Eubanks was not entitled to recover damages for waste based on the alleged breach of a commercial lease.
I. Did the trial court err in denying Bannister’s fraud claims?
Bannister argues that the trial court erred in denying his fraud claims against Ms. Eubanks. Bannister also argues that the trial court erred in rejecting the affirmative defense of fraud in the inducement arising from the purchase of Ms. Eu-banks’s stock.
In reviewing a case where the trial court has heard ore tenus evidence, the appellate court accords a presumption of correctness to the trial court’s findings of fact. Smith v. Mid South Fiberglass, Inc., 531 So.2d 649 (Ala.1988). When the trial court makes findings of fact after hearing conflicting evidence, every presumption will be in *566 dulged in favor of the court’s findings, and those findings will not be disturbed unless they are palpably wrong. Parker v. Barnes, 519 So.2d 945 (Ala.1988); First Nat’l Bank of Mobile v. Duckworth, 502 So.2d 709 (Ala.1987); Gulledge v. Frosty Land Foods Int’l, Inc., 414 So.2d 60 (Ala.1982).
This Court will reverse the trial court’s judgment only if it is found to be plainly and palpably wrong after a consideration of all of the evidence and all reasonable inferences that can be drawn from the evidence. City of Birmingham v. Sansing Sales, 547 So.2d 464 (Ala.1989). As Rule 52, A.R.Civ.P., states, “Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.”
Bannister contends, as an affirmitive defense, that he was fraudulently induced to purchase Ms. Eubanks’s stock in Glenn Engineering. There was conflicting testimony concerning the manipulation of financial records by Ms. Eubanks. For example, two versions of the financial statement were allegedly given to Bannister. Bannister asserts that the information Ms. Eu-banks provided him was incorrect and that Ms. Eubanks knew the information was incorrect.
Bannister also contends that the trial court erred in rejecting his claim of fraud based on manipulation and misrepresentation of the appraisal of Glenn Engineering’s machinery. Bannister claims that Ms. Eubanks manipulated an appraisal made in 1982. Bannister contends that Ms. Eubanks changed the date of the appraisal made in 1982 so that it appeared to be representative of the value of Glenn Engineering’s machinery in 1985. Bannister asserts that that appraisal materially overstated the value of Glenn Engineering’s machinery in 1985.
The accountant for Ms. Eubanks testified that it was discretionary in the accounting profession as to whether the machinery in question is classified as “tooling” or as a “finished good” and that a “finished good” is part of a company’s inventory and “tooling” is an asset. Ms. Eubanks also contends that the reclassification of the “finished good” in the financial statement was fully disclosed to Mr. Eubanks.
Bannister also contends that Ms. Eu-banks misrepresented to him that money was owed to Glenn Engineering by Sperry Corporation for a recent manufacturing job. Bannister claims that Glenn Engineering actually owed money to Sperry Corporation. Ms. Eubanks asserts that she did not misrepresent that there was money owed by Sperry Corporation to Glenn Engineering and that any error was the fault of Sperry Corporation, not Glenn Engineering. Ms. Eubanks states that Bannister knew of Glenn Engineering’s financial trouble; that he had ample time to review the records; and that his own accountant did in fact review the financial records.
In reviewing the record, this Court finds evidence to support the trial court’s conclusion that Bannister failed to meet his burden of proof for the fraud claims. There is also ample evidence to support the trial court’s finding that Ms. Eubanks is entitled to recover on the three promissory notes. The trial judge had the advantage of seeing the witnesses and the numerous documents and hearing the testimony of both parties. The trial court’s conclusion was not plainly and palpably wrong and, thus, will not be reversed.
II. Did the trial court err in awarding Ms. Eubanks attorney fees?
The trial court awarded attorney fees to Ms. Eubanks. Under the terms of the promissory notes at issue, the holder of the notes was specifically entitled to an award of attorney fees and court costs in the event of default. Bannister contends that the parties had made no agreement that an award of an attorney fee in the amount of 15% of the balance due on the notes would be reasonable.
Bannister argues that there was no evidence whatever to support the award of an attorney fee in the amount of 15% of the unpaid balance of the notes. Ms. Eubanks alleged that before trial, counsel for the parties agreed orally that if Ms. Eubanks *567 was entitled to a recovery for the breach of contract regarding the promissory notes, then a 15% attorney fee would be acceptable. Ms. Eubanks alleged that this stipulation was made in the judge’s chambers. Such an oral agreement does not appear in the record.
The trial court’s award of an attorney fee was made pursuant to the terms of the three promissory notes, which called for reasonable attorney fees to be assessed in the event of default. Attorney fees awarded at trial are clearly within the sound discretion of the trial court. Robbins v. Smith, 495 So.2d 577 (Ala.1986); Hicks v. Hicks, 405 So.2d 31 (Ala.Civ.App.1981). This Court will not set aside the trial court’s award of attorney fees unless there is clear evidence of abuse of that discretion. Army Aviation Center Fed. Credit Union v. Poston, 460 So.2d 139 (Ala.1984).
In Army Aviation Center Fed. Credit Union v. Poston, the court set out the standard to be used in determining whether an attorney fee is reasonable. The court will be “guided by its own judgment,” after considering the entire record. Id. Also, this court stated that there is a presumption in favor of the trial court’s ruling, and that that ruling will not be set aside unless that court abused its discretion. Id. In reviewing the record, we clearly cannot say that the trial judge abused his discretion in awarding an attorney fee of 15% in the instant case.
III. Did the trial court err in allowing an amendment, at trial, to Ms. Eu-banks’s complaint?
Bannister claims that the trial court erred in allowing Ms. Eubanks to amend her complaint to claim a breach of contract, i.e. default on the June 30, 1986, promissory note.
In her complaint, Ms. Eubanks claimed that Bannister had breached the “memorandum of intent” agreement. She did not specifically refer in her complaint to the June 30, 1986, promissory note executed by Bannister to evidence his agreement to pay $135,000 for Ms. Eubanks’s stock. The June 30, 1986, promissory note was not breached by Bannister until July 1987, after the original complaint was filed.
A review of the record shows that Ms. Eubanks moved for partial summary judgment on May 3, 1988, attaching the June 30, 1986, promissory note to the motion. Also, Ms. Eubanks mentioned the stock purchase agreement and the promissory note in question in the memorandum brief in support of her summary judgment motion. Rule 15(b), A.R.Civ.P., governs amendments to the complaint made to conform the complaint to the pleadings. The trial judge can allow pleadings to be amended “and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in the maintaining of his action or defense upon the merits.” Rule 15(b), A.R. Civ.P. Bannister was not surprised or prejudiced by the amendment that allowed Ms. Eubanks to make a claim based on the June 30, 1986, promissory note, because he knew this note was an integral part of the litigation.
We affirm the judgment of the trial court.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.