[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10425

Non-Argument Calendar

_____

GRUPO HGM TECNOLOGIAS SUBMARINA, S.A.,

Plaintiff-Appellee,

*versus*

ENERGY SUBSEA, LLC,
ODDGEIR INGVARTSEN,

Defendants-Appellants,

INGVARTSEN AS, et al.,

Defendants.

———————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:18-cv-00430-JB-N

———————————

Before JORDAN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

This case arises from a contract dispute over salvaging plane wreckage from the ocean floor. Energy Subsea, LLC (Energy) appeals after a bench trial that resulted in a damages award to Grupo HGM Tecnologias Submarina (Grupo). Energy and its managing member, Oddgeir Ingvartsen, challenge five aspects of the district court's order: They assert (1) that they did not breach their contract with Grupo, (2) that they did not commit fraud, (3) that Energy was not Ingvartsen's alter ego, and (4) that they did not owe attorney's fees to Grupo. Ingvartsen separately argues, for the first time on appeal, (5) that he was denied a fair trial when his counsel had to participate via video during the COVID pandemic. We affirm the district court in all respects and deny Ingvartsen's request for a new trial.

I

In July and August 2017, two small jets crashed into the sea off the coast of Venezuela while carrying high-ranking Venezuelan government officials. The Venezuelan Civil Authority hired

Grupo to locate and recover the two planes.  Grupo is a Panamanian company with its principal place of business in Venezuela.  An Energy employee who used to work for Grupo approached Grupo's current management and offered to provide the necessary equipment and perform the work.  Energy is a Florida-incorporated LLC that operates from Mobile, Alabama.  Grupo and Energy then negotiated a contract for $650,000; Grupo would pay $450,000 up front and $200,000 after the first 30 days of operation, alongside other fees and charges for additional work.  The parties agreed that mobilization would begin as soon as they exchanged the first payment.

The parties soon realized that it would be difficult to transfer money from Venezuela to the United States.  Oddgeir Ingvartsen was Energy's managing LLC member, and he suggested using another company that he owned in Norway, Ingvartsen AS, to transfer funds through a European bank account to Energy.  Grupo then signed another contract with Ingvartsen AS.  Grupo wired the $450,000, and Ingvartsen AS transferred appropriate amounts to Energy and other companies to perform the job.

Energy stated in an email to Grupo that it would have a vessel ready within five days of the first payment and that transit to Venezuela would take seven days, for a total of twelve days until arrival.  Energy also represented that it was 90% sure that it would charter a vessel from another company called Laborde Marine.  In reality, Ingvartsen opened the Energy bank account with only $100 just days before the transaction with Grupo.  Ingvartsen also had

not contacted Laborde Marine, had never hired one of its vessels, and did not obtain a quote from that company until May of the following year.

A few weeks later, Energy told Grupo that the U.S. government had routed many vessels to assist with recovery from Hurricane Maria, creating difficulties for their project. They sent only sonar equipment and a team to use it, leaving Grupo to provide a vessel and other support equipment. Energy returned $100,000 of the original contract price to cover Grupo's costs. This transaction only covered part of the contracted work—localizing the lost aircraft—and the rest of the recovery work remained.

A few weeks later, Ingvartsen demanded an additional $200,000 from Grupo to charter a vessel. Though the contract did not require it, Grupo acquiesced. Still Energy did not perform. Grupo asked for some of its money back. In response, Ingvartsen presented an invoice for the side-scan sonar work it had already provided, showing well above the pricing that the contract quotes originally indicated.[1]

A few months later in January 2018, Ingvartsen again demanded more money to charter a vessel. Grupo again complied, wiring about $256,000 to Energy. In February, Ingvartsen again asked for more money. Grupo delivered it in the form of fuel,

---

[1] The district court omitted $25,000 for sonar mobilization, but this omission has no effect on its conclusion of fact that the December 9, 2017 invoice from Ingvartsen AS far exceeded their original quotes for the work.

which Energy promptly sold for $359,260.  Energy still did not perform.  Finally, Grupo chartered another company's vessel.

Grupo sued for breach of contract, fraud, and unjust enrichment, and alleged that Ingvartsen had used Energy as his alter ego. Grupo won a damages award of $3,575,138.90 after a bench trial. The district court held that Oddgeir Ingvartsen had treated Energy and Ingvartsen AS like alter egos, so he and Energy were jointly and severally liable for breach of contract and fraud.[2]

## II

Following a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1319 (11th Cir. 2011).  We have maritime jurisdiction over a contract "for hire either of a ship or of the sailors and officers to man her." *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961); *see also* U.S. Const. art. III, § 2, cl. 1 (extending federal judicial power to "all Cases of admiralty and maritime jurisdiction"); 28 U.S.C. § 1333(1) (granting federal district courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction").  We may exercise supplemental jurisdiction over state-law claims that comprise "part of the same case or controversy" as admiralty-contract claims.  28 U.S.C. § 1367.  Alternatively, claims relying on state law in this case are

---

[2] The district court dismissed the unjust-enrichment claim on the ground that it was unavailable because the plaintiff "ha[d] an adequate remedy for breach of contract."  The parties do not raise this claim on appeal.

covered by the grant of diversity jurisdiction because the amount-in-controversy here exceeds $75,000 and Grupo is a foreign corporation. 28 U.S.C. § 1332(a)(2).

## III

Energy and Ingvartsen raise five challenges to the district court's order. They appeal the district court's holdings that Energy breached the contract, that Energy was Oddgeir Ingvartsen's alter ego, that Energy and Ingvartsen committed fraud, and that Energy owed attorney's fees to Grupo. Ingvartsen contends, for the first time on appeal, that he was denied a fair trial because his lawyer was forced to use video technology to join the proceedings during the COVID pandemic.

## A

Energy and Ingvartsen argue that they did not breach their contract with Grupo. We face two issues within the breach-of-contract claim: (1) whether Energy breached its contract with Grupo; and (2) whether Grupo's contract with Ingvartsen effectively was a novation of the initial contract that relieved Energy of its duties. The first proposition relies on the second, so we start with the latter question.

In determining whether a novation occurred, we face a threshold question: Does maritime or Alabama law govern the novation issue? The parties agree that the contract is maritime in nature. If they so choose, they can waive applying Alabama law to the contract. *See, e.g., Wallace v. NCL (Bahamas) Ltd.*, 733 F.3d

1093, 1104 n.10 (11th Cir. 2013); *see generally Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208–09 (11th Cir. 2018). But it is not self-evident that a novation of a maritime contract must be governed by the same law as the maritime contract itself (which usually would be governed by federal common law) especially when the parties agreed to that course of action. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 27 (2004)("[N]ot every term in every maritime contract can only be controlled by some federally defined admiralty rule.") (quoting *Wilburn Boat Co. v. Fireman's Fund Ins.*, 348 U.S. 310, 313 (1955) (applying state law to a maritime contract for marine insurance because of the state's regulatory power over the insurance industry)). The district court applied Alabama law to the novation issue.

The general choice-of-law rule relies on a concern for uniformity: "While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court." *Pope & Talbot v. Hawn*, 346 U.S. 406, 409–10 (1953); *see Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 210 (1996) ("[I]n several contexts, we have recognized that vindication of maritime policies demanded uniform adherence to a federal rule of decision, with no leeway for variation or supplementation by state law.").

Ultimately, we need not reach the choice-of-law question because Ingvartsen's argument fails under both standards. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 375–76

(1959) ("This Court has been able to wait until an actual conflict between state and federal standards has arisen, and only then proceed to resolve the problem of whether the State was free to regulate or federal law must govern."), *overruled on other grounds*, *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990)[3]; *Grigsby v. Coastal Marine Serv. of Tex., Inc.*, 412 F.2d 1011, 1026–27 (5th Cir. 1969) ("It is immaterial whether that duty is imposed by state statute, the common law or the maritime law.  In any case, the failure to perform the duty constitutes 'fault.'").  Alabama law embodies a four-pronged novation test: "(1) a previous valid obligation; (2) an agreement of the parties thereto to a new contract or obligation; (3) an agreement that it is an extinguishment of the old contract or obligation; and (4) the new contract or obligation must be a valid one between the parties thereto." *Safeco Ins. of Am. v. Graybar Elec. Co.*, 59 So. 3d 649, 656 (Ala. 2010) (quoting *Boh Bros. Constr. Co. v. Nelson*, 730 So. 2d 132, 134 (Ala. 1999)).  The federal admiralty standard is similar:  "A *novation* is the substitution of a new for an old debt, by which the latter is extinguished. . . . But the consent of the creditor must be positively declared, as the law will not presume that he means to abandon his rights under the first contract." *Ramsay v. Allegre*, 25 U.S. 611, 612–13 (1827).

---

[3] *Miles v. Apex Marine Corp.*, 498 U.S. 19, 33 (1990), noted that *Romero*'s holding that there was no maritime right of survival was superseded by statute with the Jones Act, which allows such a right of action to survive to the seaman's personal representative.  But its choice-of-law reasoning was unaffected.

Both standards require some evidence of an agreement that the new contract is an extinguishment of the old. Energy has provided none except conclusory deposition testimony from Ingvartsen. The district court did not find this testimony credible, and we find no clear error in that determination. Meanwhile, Grupo produced three witnesses testifying that their understanding was always that Energy Subsea was continuing to perform its contract via payment through Ingvartsen AS. We also find no clear error in the district court's finding that Grupo always intended for Energy to perform the contract. *See Southern Coal Corp. v. Drummond Coal Sales, Inc.*, 28 F.4th 1334, 1341 (11th Cir. 2022) ("If a contract is ambiguous 'and the trial court must look to extrinsic evidence to determine the parties' intent, we review its findings of fact . . . as to the parties' intent for clear error.") (quoting *Reynolds v. Roberts*, 202 F.3d 1303 (11th Cir. 2000)). We affirm the district court's holding that no novation occurred here.

Because there was no novation, Energy remained bound to its contract with Grupo. Here, the parties' agreement that the contract is maritime clearly points us toward federal maritime breach standards. To recover damages for breach of contract, Grupo must prove "(1) the terms of the maritime contract, (2) that the contract was breached, and (3) the reasonable value of the purported damages." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005). The parties do not dispute that they entered a contract or that Energy failed to perform. That failure is dispositive.

Energy's briefing cites no law in support of its position on breach of contract, so we evaluate two alternative legal theories that it might be advancing.  First, to the extent that Energy now argues cancellation instead of novation, we hold that, as the novation analysis discussed, there was no agreement to cancel the original contract, for Hurricane Maria-related reasons or otherwise.  Ingvartsen's letter stating that Hurricane Maria had created difficulties promised a vessel in January 2018, but Energy did not perform by that date and continued demanding further payments afterward.  This letter shows that Ingvartsen, to the contrary, agreed to continue attempting performance.

Second, if Energy contends that force majeure prevented performance, we find that argument similarly unpersuasive.  The contract contains no explicit force-majeure clause.  One identical clause in both contracts could be interpreted to provide for physical impossibility:  "Except to the extent that it may be legally or physical impossible . . . the Contractor shall comply with the Company's reasonable instructions . . . ."  Even if we interpret this clause generously as a force-majeure provision, Energy's argument would fail under both maritime and Alabama law.[4]  Alabama law

---

[4] If we did not construe this clause as a force-majeure provision, Energy's argument would be completely foreclosed under Alabama law. *Alpine Const. Co. v. Water Works Bd. of City of Birmingham*, 377 So. 2d 954, 956 (Ala. 1979) ("Where one by his contract undertakes an obligation which is absolute, he is bound to perform within the terms of the contract or answer in damages, despite an act of God . . . because these contingencies could have been provided against by his contract.").

will not recognize a force-majeure excuse if the breaching party has "been guilty of great neglect" so that "its own negligence concurred with the act of God" to prevent performance. *Ollinger & Bruce Dry Dock Co. v. James Gibbony & Co.*, 202 Ala. 516, 519 (1918). Maritime law will similarly reject force majeure if the breaching party has not "demonstrate[d] its efforts to perform its contractual duties despite the occurrence of the event that it claims constituted force majeure." *Phillips Puerto Rico Core, Inc. v. Tradax Petroleum Ltd.*, 782 F.2d 314, 319 (2d Cir. 1985). "The burden of demonstrating force majeure is on the party seeking to have its performance excused." *Id.*

Energy has not met its burden to demonstrate its efforts to perform; to the contrary, the facts show that its own negligence resulted in breach. *See, e.g.*, Doc. 82 at 14 (showing that Ingvartsen had not contacted the company he was going to use for a vessel charter, had never used that company, and did not get a quote until May of the following year, meanwhile using that company's name in his promises to Grupo); *id.* at 6–7 (Ingvartsen refusing to return Grupo's money when it did not perform and instead sending an above-market invoice for the small partial performance it had rendered); *id.* (Grupo's first $200,000 payment above the contract price); *id.* at 7 (showing Grupo's second additional payment of $256,000); *id.* at 7 (showing Grupo's third payment in the form of fuel that Energy sold for $359,260); Br. of Appellant at 20 (confirming that Ingvartsen opened a new account with $100 just before this transaction, supposedly for only this transaction).

We thus affirm the district court's holding that Energy breached its contract.

## B

Ingvartsen also challenges the district court's holding that he used Energy as an alter ego, rendering him jointly and severally liable for damages. Again, we need not reach the choice-of-law issue, because Ingvartsen would lose under either standard.

Both maritime and state standards rely on the trial court's findings of fact to determine whether to pierce the corporate veil. Under maritime law, "[w]hether a corporate entity will be disregarded depends upon the trial court's findings of fact." *Talen's Landing, Inc. v. M/V Venture, II*, 656 F.2d 1157, 1160 (5th Cir. Unit A Sept. 1981); *id.* ("It is clear that Admiralty Courts can pierce the corporate veil of a corporation in order to reach the 'alter egos' of the corporate defendant directly involved.") (citing *Swift & Co. Packers v. Compania Colombiana Del Caribe S.A.*, 339 U.S. 684 (1950)); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1998). "[A] finding of control or domination of a corporation by an individual or a corporate entity and the use of the corporate fiction are necessary prerequisites to the application of the alter-ego theory of liability. . . . Once such a connection is established, it is appropriate to brush aside the corporate veil when it appears a corporation was organized for fraudulent purposes, illegality, or wrongdoing. . . . Likewise, the fiction of corporate entity will be disregarded when required in the interest of justice." *Talen's Landing, Inc.*, 656 F.2d at 1161 n.6.

The very case that Ingvartsen cites shows that Alabama law is to the same effect: "[T]he following factors are to be considered when determining whether to disregard the corporate form: '(1) inadequacy of capital; (2) fraudulent purpose in conception or operation of the business; or (3) operation of the corporation as an instrumentality or alter ego.'" *M&M Wholesale Florist, Inc. v. Emmons*, 600 So. 2d 998, 1000 (Ala. 1992) (quoting *First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334 (Ala. 1991)).

The district court found that Ingvartsen dominated and controlled Energy Subsea for alter-ego purposes.  He opened a bank account for Energy with a $100 deposit only days before the transaction with Grupo, though he argues that he opened a new account for this transaction.  He then proceeded to transfer funds gratuitously between Energy and Ingvartsen AS and his personal account, leaving Energy with a negative balance only a few months later.  We find no clear error in the district court's finding of domination and control for maritime-law purposes.  These same facts give rise to evidence of fraud in the operation of the business under Alabama law.

We review the district court's legal conclusion to pierce the corporate veil *de novo.*  We hold that its factual findings, in which there was no clear error, satisfy both the Alabama and maritime standards for piercing the corporate veil.  On the maritime front, given the prerequisite finding of domination, "the fiction of corporate entity will be disregarded when required in the interest of justice." *Talen's Landing*, 656 F.2d at 1161 n.6.  As for Alabama law,

these facts fit both "fraudulent purpose in . . . operation of the business" and "operation of the corporation as an instrumentality or alter ego." *M&M Wholesale Florist*, 600 So. 2d at 1000 (internal citation omitted). We affirm the district court's decision: Ingvartsen and Energy are jointly and severally liable for their damages verdict.

## C

Ingvartsen also challenges the district court's holding that Energy and Ingvartsen committed tortious fraud against Grupo. The parties agree that Alabama law applies to this tort claim, and waive any other choice-of-law issues that might arise.

Alabama law sets forth four "essential elements" of a cause of action for fraud: (1) a false representation; (2) concerning a material fact; (3) reliance upon the false representation; and (4) damages as a proximate result. *Harmon v. Motors Ins.*, 493 So. 2d 1370, 1373 (Ala. 1986). Ingvartsen and Energy made several representations that would qualify. Prime among them are Ingvartsen's and Energy's representations that they would perform the contract after receiving additional payments of $200,000 in November 2017 and more than $250,000 in January 2018, as well as payment in the form of fuel in March 2018. Each representation concerning the material fact that Energy would perform induced reliance and proximately resulted in damages to Grupo. They exceeded mere breach of contract, as Energy argues, because these payments

clearly were not required by the contract. We affirm the district court's holding that Ingvartsen and Energy committed fraud.[5]

## D

The district court awarded attorney's fees to Grupo "[b]ased on the totality of Defendants' fraudulent conduct." Doc. 82 at 24. Again, we need not decide any choice-of-law issue because both the maritime and Alabama standards allow attorney's fee awards in instances of bad faith. *Compare Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (2010) ("Attorneys' fees will be awarded to the prevailing party in maritime cases if: '(1) they are provided by the statute governing the claim, [or] (2) the nonprevailing party acted in bad faith in the course of the litigation . . . .'") (quoting *Natco Ltd. Partnership v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001)) *with Reynolds v. First Alabama Bank of Montgomery, N.A.*, 471 So. 2d 1238, 1243 (Ala. 1985) ("[Attorney's fees] can be awarded, as was the case in [our precedent], where there has been a fraudulent representation."). Further, both Alabama and maritime law require us to review awards of attorney's fees for abuse of discretion. *Compare*

---

[5] Energy makes only passing mention of a limited-liability clause in the facts section of its brief, and has thus forfeited argument on that point. *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting argument and authority.").

*Compania Galeana, S.A. v. Motor Vessel Caribbean Mara*, 565 F.2d 358, 360 (5th Cir. 1978) (reviewing a denial of attorney's fees in an admiralty action for abuse of discretion) *with Bannister v. Eubanks*, 575 So. 2d 563, 567 (Ala. 1991) ("This Court will not set aside the trial court's award of attorney fees unless there is clear evidence of abuse of that discretion.").

We find no abuse of discretion. The facts amply support the district court's decision that Energy and Ingvartsen demonstrated bad faith in their dealings with Grupo. *See, e.g.*, Doc. 82 at 14 (showing that Ingvartsen had not contacted the company he was going to use for a vessel charter, had never used that company, and did not get a quote until May of the following year, meanwhile using that company's name in his promises to Grupo); *id.* at 6–7 (showing Ingvartsen refusing to return Grupo's money when it did not perform and instead sending an above-market invoice for the small partial performance it had rendered); *id.* (Grupo's first $200,000 payment above the contract price); *id.* at 7 (showing Grupo's second additional payment of $256,000); *id.* at 7 (showing Grupo's third payment in the form of fuel that Energy sold for $359,260). We affirm the district court's award of attorney's fees.

## E

Finally, Ingvartsen seeks a new trial based on the district court's COVID protocols, including having Ingvartsen's counsel participate via video conference. After Ingvartsen's counsel informed the court that he may have been exposed to COVID, the judge asked whether he would be willing to "participate remotely."

Trial counsel stated that he had "no objection to that." He only asked for time to go to his office where he could access the software to do so. We need not decide whether video participation during the COVID pandemic was problematic because any error was invited. *United States v. Feldman*, 931 F.3d 1245, 1260 (11th Cir. 2019) ("[W]hen a party agrees with a court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result.") (quoting *United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010)). Ingvartsen's counsel explicitly agreed to conducting the trial via video, so any error was invited and we decline to review it.

## IV

In sum, we affirm the district court in all respects. It did not err in holding that Energy had breached its contract with Grupo, that Energy was Ingvartsen's alter ego, that Energy and Ingvartsen committed tortious fraud, and that Energy owed attorney's fees to Grupo. We also decline to review Ingvartsen's request for a new trial because any error was invited.

For the foregoing reasons, we affirm the district court's order and deny appellant's request for a new trial.

**AFFIRMED.**